COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 24, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

DAVID HICKS,                        ) C/A NO. 03A01-9701-CH-00019
                                    )
    Plaintiff-Appellant,        )
                                    )
                                    )
                                    ) APPEAL AS OF RIGHT FROM THE
v.                                  ) CAMPBELL COUNTY CHANCERY COURT
                                    )
                                    )
                                    )
GENE E. COX and CONNIE WHITTAKER,)
                                    ) HONORABLE BILLY JOE WHITE,
    Defendants-Appellees        ) CHANCELLOR


For Appellant                       For Appellees

JAMES L. ARNOLD                     PHILIP R. CRYE, JR.
LaFollette, Tennessee               Magill, Crye & Cizek
                                    Clinton, Tennessee


O P I N I O N


REVERSED AND REMANDED                              Susano, J.

The plaintiff, David Hicks ("Hicks"),[1] sued Gene E. Cox ("Cox") and Connie Whittaker ("Whittaker")[2], each of whom owns an interest in property immediately adjacent to Hicks' subdivision lot, seeking to enforce deed restrictions that prohibit, among other things, the placing of "trailers" on the defendants' property. The trial court held that, even assuming the restrictions pertaining to the defendants' property were broad enough to cover Whittaker's single-wide mobile home, the "enforcement of such restriction has been waived or [Hicks] should be estopped to enforce same." Hicks appealed, arguing that the single-wide mobile home is a "trailer," as that term is used in the restrictive covenants; that the trial court erred in admitting hearsay testimony as to the developer's intent with respect to the use of the word "trailers"; and, finally, that the trial court erred when it ruled that Hicks was precluded from enforcing the restrictive covenant against "trailers" under the doctrines of waiver and estoppel.

I. *Facts*

In 1993, Hicks purchased Lot H-7 in Shady Cove Subdivision in Campbell County. Cox owns property adjacent to Hicks' lot. Cox's lots are designated as H-8, H-9, and H-10. He has lived in a double-wide mobile home on Lot H-10 since 1988.

---

[1] Mr. Hicks' wife, Carolyn Hicks, was originally a plaintiff in this case. She died while the case was pending below.

[2] For ease of reference, Cox and Whittaker will be referred to collectively as "the defendants."

2

The subdivision was developed by Fred Waddell ("Waddell")[3] over 20 years ago. When the subdivision plat was recorded, Waddell did not record restrictions as to the subdivision as a whole. Instead, he chose to place restrictive covenants in the individual deeds as the lots were sold. The record reflects that some of the deeds do not contain an express prohibition against "trailers," while others do. For example, Hicks' deed, which incorporates restrictions by reference to an earlier deed in his chain of title, includes a prohibition against the placement of "a mobile home or trailer" on his lot. The deed at issue here, by which Waddell conveyed Lot H-8 to Cox, recites "[t]hat no trailers shall be placed on [the] subject property." The full restrictive covenants in Cox's deed are as follows:

> Said property is sold subject to the following restrictions which shall be binding upon the grantee, his successors and assigns: (1) That no horse, cow, hog, goat or similar animal shall be kept or maintained on said premises or any part thereof, nor shall any chicken yard be maintained thereon; (2) That no building nor structure shall be used for any purpose whatsoever other than that of a residence and especially said property shall not at any time be used for the purposes of any trade, business or manufacture; (3) That ll [sic][4] lavatories and/or toilets shall be built indoors and connected with outside septic tanks or cesspool; *(4) That no tents, shacks, garages, barns, or other outbuildings erected on this tract shall* [sic] *any structure of a temporary character be used as a residence;* (5) That said conveyance is made subject to the restrictions placed upon said land conveyance of said property from the United States to Fred Waddell, et ux; *(6) These restrictions and reservations are made*

---

[3]Mr. Waddell died prior to the commencement of this action.

[4]The "ll" in covenant (3) was apparently intended to be the word "all."

>*for the benefit of any and all persons who now may own, or who may hereafter own property in the Shady Cove Subdivision, and such persons are specifically given the right to enforce these restrictions and reservations;* (7) As stated above the party of the second part is to have the use of the private road owned by parties of the first part which leads to the county road for recreational purposes only; *(8) That no trailers shall be placed on subject property.*

(Emphasis added.)

Mobile homes -- primarily of the double-wide variety -- have been placed on several lots in the subdivision.  As indicated earlier, Cox lives in a double-wide mobile home, which is situated on Lot H-10.  His deed contains a prohibition against "trailers."  Lot H-4, which is located down the road from Hicks' property, is occupied by a double-wide mobile home; however, the ownership of that lot is not burdened with a deed restriction against "trailers."  The same is true of Lot H-1, on which is located a single-wide mobile home.  In addition, Margaret Carter, who testified on behalf of the defendants, lives in a double-wide mobile home on Lot G-27 in the same subdivision, to the rear of Cox's double-wide mobile home.  The restrictions in her deed are the same as in the deed covering the defendants' property.

Prior to the filing of this suit, Whittaker entered into a land contract with Cox, by the terms of which Whittaker obtained a possessory interest in Lot H-8 and a portion of Lot H-9.  After that contract was executed, Whittaker placed on the property a single-wide mobile home, which she thereafter occupied as her residence.  Although it is not entirely clear from the

4

record, it appears that Whittaker's mobile home is situated primarily on Lot H-8, which is the tract immediately adjacent to Hicks' property.

Hicks filed this action in response to the placement of Whittaker's single-wide mobile home. His complaint requests the trial court to order the removal of the mobile home and seeks to permanently enjoin the defendants from placing similar structures on the property in question.[5] He contended in the trial court, as he contends here, that the restriction in the deed to Lot H-8 -- "[t]hat no trailers shall be placed on [the] subject property" -- prohibits single-wide mobile homes such as the one placed on the subject property. The defendants, on the other hand, argue that the restriction was intended to exclude only silver-sided or camping-type trailers, and that in any event, the right to enforce the restriction has been waived or is not available to Hicks by reason of estoppel.

In support of their contention that Whittaker's mobile home does not fall within the ambit of the subject restrictions, the defendants rely upon trial testimony regarding statements made by Waddell. Witnesses testified that Waddell told certain individuals who purchased lots in the subdivision that the restriction as to "trailers" was meant to apply to "a travel trailer, one you pull behind an automobile," and specifically a "silver-side" or camper-type trailer. Hicks objected to this testimony, but the trial court allowed it, noting that Waddell

_____

[5]In his complaint, Hicks and his wife originally named Cox as the only defendant. However, after Cox's answer revealed that the property in question was subject to the land contract with Whittaker, Hicks was permitted to amend his complaint to include Whittaker as a defendant.

was "the predecessor to title."  Hicks had earlier testified,
over the defendants' objection, that Waddell told him in 1988
that he, Hicks, could not put a mobile home on a lot he was
considering.  Hicks testified that because of Waddell's
statement, he did not purchase that lot.[6]

Following the hearing, the trial court ruled as
follows:

> Until the Court's heard testimony that during
> Mr. Waddell's lifetime, that there were
> double-wides, at least on property in this
> subdivision, Ms. Carter testified that he was
> an often times visitor in her home, and she
> lived in a double-wide.  Double-wide, single-
> wide, and manufactured homes are all the same
> under restrictions.  We've heard testimony as
> to what [Waddell] intended.  And he said he
> intended to restrict silver-sides, such as
> are ordinarily parked on the lake for fishing
> cabins.  I'm of the opinion that these
> restrictions, if they would cover single-wide
> trailers as in question here, were waived, or
> the -- Mr. Waddell would be estopped either
> to now attempt to enforce restrictions that
> have been waived by him for many, many years.
> So, I don't think it's -- would be proper to
> order the removal of this single-wide
> trailer.  The case is dismissed.

## II.  *Standard of Review*

In this non-jury case, our review is *de novo* upon the
record of the proceedings below; but the record comes to us with
a presumption of correctness as to the trial court's factual
findings that we must honor "unless the preponderance of the
evidence is otherwise."  Rule 13(d), T.R.A.P.  "The scope of

---

[6]Hicks later purchased another lot on which he built a house.  The
defendants' property is next to that lot.

review for questions of law is *de novo* upon the record of the [trial court] with no presumption of correctness." **Ganzevoort v. Russell**, 949 S.W.2d 293, 296 (Tenn. 1997).

## III. *Applicable Law*

Generally speaking, unambiguous restrictive covenants are to be interpreted in the same manner as any writing, **Aldridge v. Morgan**, 912 S.W.2d 151, 153 (Tenn.App. 1995); thus, words in such covenants must be given their usual and ordinary meaning. **Id.**; **Rainey v. Stansell**, 836 S.W.2d 117, 119 (Tenn.App. 1992). Furthermore, when the meaning of a restriction "is reasonable and unambiguous, there is no need to seek further clarification outside its language." **Shea v. Sargent**, 499 S.W.2d 871, 874 (Tenn. 1973). The terms of an unambiguous restrictive covenant cannot be varied or altered by parol evidence. *See* **Jones v. Brooks**, 696 S.W.2d 885, 886 (Tenn. 1985); **Rolen v. Rolen**, 57 Tenn.App. 637, 423 S.W.2d 280, 282 (1967); **Moon v. Webb**, 584 S.W.2d 803, 805 (Tenn.App. 1979); **In re Johnson**, 187 B.R. 598, 602 (E.D. Tenn. 1994).

It is true that restrictions on the free use of real property are not favored and will be strictly construed. **Beacon Hills Homeowners Ass'n, Inc. v. Palmer Properties, Inc.**, 911 S.W.2d 736, 739 (Tenn.App. 1995); **Jones v. Englund**, 870 S.W.2d 525, 527 (Tenn.App. 1993). Nevertheless, the overriding factor is the intent of the parties. **Beacon Hills**, 911 S.W.2d at 739. This Court has stated that

7

> [i]t is well established law in this State
> that a person owning a body of land may sell
> portions thereof and make restrictions as to
> its use for the benefit of himself as well as
> those to whom he sells.  (Citations omitted).
>
>                     *     *     *
>
> Notwithstanding the law's unfavorable regard
> toward restrictive covenants and its strict
> construction of them, such restrictions, like
> other contracts, will be enforced according
> to the clearly expressed intention of the
> parties.  (Citations omitted).

*Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn.App. 1982); *Jones*, 870
S.W.2d at 529.


IV.  *Analysis*


Our initial task is to ascertain the scope of the
restriction against "trailers."  Restrictive covenants similar to
the one now before us have been considered in a number of
Tennessee appellate decisions.  *Cf.*  *Albert v. Orwige*, 731 S.W.2d
63 (Tenn.App. 1987); *Beacon Hills*, 911 S.W.2d 736 (Tenn.App.
1995); *Reece v. Lawson*, 1994 WL 171056 (Tenn.App. 1994), an
unpublished opinion filed May 6, 1994; *Reese v. Edwards*, 1989 WL
51519 (Tenn.App. 1989), an unpublished opinion filed May 18,
1989.  It is obvious from these and other cases that restrictive
covenants against "trailers" are not unusual in the development
and deeding of property.  These cases have a common theme, *i.e.*,
-- that the terms "mobile homes" or "trailers" should be given a
broad construction because, historically speaking, such a
construction is consistent with the desire of developers to

8

prevent property owners from placing residential units that were constructed off-site onto subdivision lots.

The **Beacon Hills** case is particularly instructive. In that case, the court was faced with the following restrictive covenant:

> TEMPORARY STRUCTURES: No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently.

911 S.W.2d at 737. The question in **Beacon Hills** was whether a "manufactured home" -- two units, each of which was to be transported to the site by a tractor-truck and there attached together and secured to a foundation -- fell within the quoted restriction. In holding that the word "trailer" included the defendant's "manufactured home," this court said the following:

> Since, however, the restrictions in Beacon Hills Subdivision do not mention "mobile home" but prohibit "trailers," it is necessary for us to determine if "trailer" as used in the restrictive covenants was intended to apply to "mobile homes" or "manufactured homes" as those terms are now used. While we are aware of the rule in this jurisdiction that restrictive covenants are not favored and must be strictly construed, we are of the opinion that the intent of the parties is controlling.
>
> > Such restrictive covenants, of course, will be enforced according to the clearly expressed intention of the parties; but being in derogation of the right of unrestricted use of property will be strictly construed, and will not be extended by implication to anything not clearly and expressly

9

> prohibited by their plain terms.
> (Citations omitted).
>
> *Turnley v. Garfinkel*, 211 Tenn. 125, 362
> S.W.2d 921 (1962). *See also* the dissent by
> Judge Crawford in *Albert v. Orwige*, *supra*.
>
> Considerable evidence was adduced in this
> case to demonstrate that, when completed, the
> structure would be as attractive as a site
> constructed home and some of the existing
> homes in the subdivision. It appears from
> the evidence on the point that, if
> constructed in conformity with the plans of
> the appellant, the aesthetics of the
> neighborhood would not be adversely affected.
> This fact, however, is of no consequence in
> deciding the issue before the court.
>
> It seems clear that it was the intent of the
> parties who prepared the restrictive
> covenants when using the term "trailer" were
> contemplating a "trailer used as a
> residence." As the trial court pointed out
> the use of the term "trailer" is no longer
> utilized for structures in which people live
> and even the term "mobile home" seems to be
> passe. We have examined a number of cases in
> this jurisdiction which use the term
> "trailer" and "mobile home" in referring to a
> residence and find that at the time of the
> filing of the restrictive covenants in this
> case, the terms "trailer" and "mobile home"
> were used interchangeably with "trailer"
> being the predominant term during that
> period. Indeed, we find the terms to be used
> by the courts interchangeably through 1994.

*Id*. at 738-39.

We believe that *Beacon Hills* is controlling. The restrictive covenants in that case are similar to the ones before us. Both are directed at "trailers"; both are aimed at preventing "temporary" residential structures. We find and hold that, when given its "usual, natural and ordinary meaning," *Rainey*, 836 S.W.2d at 119, the term "trailer" is subject to only one reasonable interpretation in the context of the period of

10

time when the restriction was placed in the subject deed, i.e., 1986. We believe, as the trial court suggested, that the word "trailer" in the 1986 time frame would include not only a camping trailer, but also a single-wide mobile home of the variety placed on the defendants' property. This holding is consistent with the statutory definition of mobile home or house trailer set forth at T.C.A. § 55-1-105(a),[7] which definition is also cited in **Beacon Hills**. *See* 911 S.W.2d at 737. Our holding is also consistent with the restrictive covenant in the defendants' deed prohibiting a "structure of a temporary character...as a residence." This latter restriction is a further indication that the subject restrictions prohibit the placement of a single-wide mobile home on the defendants' property.

Viewing the language in Cox's deed in light of our holding in **Beacon Hills** and the statutory definition of "mobile home or house trailer," we conclude that the restrictions at issue here were intended to prohibit the placement of a single-wide mobile home, such as Whittaker's, on the subject property. We find this intention within the language of the restrictions; therefore, resort to extrinsic sources -- such as the statements attributed to Waddell -- for interpretation of those restrictions is not appropriate. **Shea v. Sargent**, 499 S.W.2d 871, 874 (Tenn. 1973). To the extent that the trial court relied upon testimony pertaining to the statements of Waddell to vary the historical

---

[7]T.C.A. § 55-1-105(a) provides as follows:

> "Mobile home or house trailer" means any vehicle or conveyance, not self-propelled, designed for travel upon the public highways, and designed for use as a residence, office, apartment, storehouse, warehouse, or any other similar purpose.

11

definition of "trailer," such reliance was not warranted.[8]  Until the Supreme Court holds otherwise, we are constrained to interpret broadly the word "trailer" in deed or subdivision restrictions, unless other language in the restrictions dictates a narrower interpretation.

We next consider the alternative basis of the trial court's holding -- "that enforcement of such restriction has been waived or [Hicks] should be estopped to enforce same."  We first note that it has been held that the right to enforce a restrictive covenant may be forfeited due to waiver or estoppel. *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn.App. 1994).  Waiver generally is defined as a voluntary or intentional relinquishment of a known right.  *American Home Assurance Co. v. Ozburn-Hessey Storage Co.*, 817 S.W.2d 672, 678 (Tenn. 1991); *Faught v. Estate of Faught*, 730 S.W.2d 323, 325 (Tenn. 1987).  Estoppel, on the other hand, has been described as follows:

> ... [estoppel] arises from the conduct or silence of a party and is sometimes referred to as equitable estoppel... When a man has been misled by the untruth propounded by another, *and acted to his detriment in reliance upon the misrepresentation*, the misleading party will be estopped to show that the true facts are contrary to those he first propounded.

*Arthur v. Lake Tansi Village, Inc.*, 590 S.W.2d 923, 930 (Tenn. 1979)(quoting *Duke v. Hopper*, 486 S.W.2d 744, 748 (Tenn.App. 1972)(emphasis in *Arthur* opinion)).

---

[8]Given this conclusion, we deem it unnecessary to consider the question of whether Waddell's statements constitute inadmissible hearsay.

Upon review of the record, we have concluded that the doctrines of waiver and estoppel are not applicable to the facts of this case. With respect to the issue of waiver, the record contains no evidence of conduct by Hicks which would amount to an intentional relinquishment of his right to enforce the restrictions in Cox's deed. It has been held by this Court that a subdivision owner retains the right to object to violations of restrictions on an adjacent lot, despite that same owner's failure to object to previous violations of similar restrictions on lots in other parts of the subdivision. *Jones v. Englund*, 870 S.W.2d 525, 528 (Tenn.App. 1993). This Court recently relied upon the following language from an earlier decision in affirming the issuance of an injunction against the installation of a manufactured home:

> When one buys a lot in a subdivision with restrictions and builds a home for his family, and has a right to rely on the same restrictions applying to other lots, he cannot be held estopped as to a lot next to him because he did not object to a violation of the restrictions on another street.

*Fields v. Moore*, C/A No. 03A01-9401-CH-00013, 1994 WL 287563, *1 (Tenn.App., E.S., filed June 30, 1994, Franks, J.)(quoting *Carson v. Knaffl*, 15 Tenn.App. 507, 514 (1932)). Thus, we find no evidence that Hicks has waived his right to enforce the restrictions in Cox's deed. Certainly, we find no legal basis for holding that Waddell's action or inaction can be imputed to Hicks.

13

With regard to estoppel, the record contains no indication that Cox or Whittaker acted in reliance upon any acts or statements by Hicks; therefore, an essential element of estoppel is absent. *Arthur*, 590 S.W.2d at 930. We find that the doctrine of estoppel is not applicable to the facts of this case. Furthermore, we are aware of no authority that would support a finding in this case that Hicks is estopped from enforcing the restrictions in Cox's deed by virtue of any conduct on the part of Waddell or others. Accordingly, we hold that the trial court erred in relying upon waiver or estoppel as an alternative basis for its decision.

## V. *Conclusion*

We therefore hold that Whittaker's mobile home falls within the restrictions applicable to the defendants' property. We further hold that Hicks has the right to enforce those restrictions. It results that the decision of the trial court is reversed. Costs on appeal are taxed to the appellees. This case is remanded to the trial court for the entry of an order enjoining the defendants from causing or allowing the placement or the continued presence of the mobile home at issue on the subject property, and for such other proceedings as are necessary, consistent with this opinion.

_____
Charles D. Susano, Jr., J.

CONCUR:

14

_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.