IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 29, 2006 Session

**LINDA BUSH**

v.

**ADWORKS ADVERTISING OUTDOOR, LLC**

**An Appeal from the Chancery Court for Shelby County**
**No. CH-05-0109-3      D.J. Alissandratos, Chancellor**

_____

**No. W2006-00763-COA-R3-CV - Filed April 30, 2007**

_____

This is a property case involving a restrictive covenant. The homeowners in a subdivision entered into a restrictive covenant agreement with the original developer of a tract of land directly across the highway from the residential subdivision. The restrictive covenant prohibits the use of the developer's property for "billboards . . . not in place on December 1, 1995." On December 1, 1995, three billboard structures existed on the burdened property. Years later, the defendant billboard company purchased easements in the three billboard sites and the existing billboard structures were removed. The defendant billboard company then erected three new billboard structures. Subsequently, the plaintiff homeowner in the subdivision filed the instant lawsuit for injunctive and declaratory relief, alleging that the defendant billboard company's placement of new billboard structures on the burdened property constituted a violation of the restrictive covenant. The parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of the defendant billboard company, and the plaintiff homeowner now appeals. We affirm, finding that the language of the restrictive covenant is unambiguous, and that it restricts only the use of the burdened property, limiting the use to the number of billboards on the property as of December 1, 1995.

**Tenn. R. App. P. 3; Judgment of the Chancery is Affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Robert A. McLean, Memphis, Tennessee, for Petitioner/Appellant Linda Bush.

Robert E. Craddock, Jr., and Kristen Mistretta Wilson, Memphis, Tennessee, for Respondent/Appellee Adworks Advertising Outdoor, LLC.

## OPINION

The instant litigation involves the construction of a restrictive covenant which benefits the homeowners in the Walnut Grove Woods Subdivision. Petitioner/Appellant Linda Bush ("Bush") is a current resident of Walnut Grove Woods Subdivision. Bush has owned a home in the subdivision since 1989, and she has lived in that home since May 1998. In the four years preceding the commencement of this action, Bush served as the president of the homeowner's association for Walnut Grove Woods Subdivision.

Before Bush moved into the subdivision, Germantown Trinity Associates ("Germantown Trinity") purchased a 39.36-acre tract of land in the southwest quadrant of the intersection of Trinity Road and North Germantown Parkway. The tract of land is directly across Germantown Parkway from the Walnut Grove Woods Subdivision. On December 22, 1994, Germantown Trinity entered into lease agreements ("billboard leases") with Tanner Outdoor, a billboard advertising company, which would permit the erection and maintenance of billboards on the subject property. Tanner Outdoor subsequently erected four billboard structures on Germantown Trinity's property.

In addition to the billboard leases, Germantown Trinity planned to subdivide and develop the property. The home and lot owners of Walnut Grove Woods Subdivision opposed certain uses of the land by Germantown Trinity. To resolve the dispute with the subdivision homeowners, Germantown Trinity entered into a restrictive covenants agreement with the home and lot owners of Walnut Grove Woods Subdivision on December 15, 1995. The agreement stated that its purpose was to compromise and resolve disputes between Germantown Trinity and the homeowners of the subdivision by subjecting German Trinity's property to "covenants, limitations, and restrictions to run with the Property." At issue here is the restrictive covenant found in section 2.a. of the agreement, which states:

> 2.    The uses permitted shall be only those allowed by the Ordinances in Highway Commercial C-H District and in Planned Commercial C-P District less and excepting the following uses as designated in Chart 1 of the Zoning Ordinance and as defined and interpreted at this time by the Office of Planning and Development which shall not be permitted:
> > a.    Off premises advertising signs, billboards, commercial outdoor advertising not in place on December 1, 1995.[1]

---

[1]Paragraph 2 also includes the following sections:

| | |
|---|---|
| b. | Agricultural uses (listed in Chart 1 of the zoning ordinance). |
| c. | Automobile parking lot. |
| d. | Boat rental, storage, repair or service. |
| e. | Campground, travel trailer park. |
| f. | Cemetery or mausoleum. |
| g. | Drive-in theater. |

(continued...)

As of December 1, 1995, the date referenced in the restrictive covenant, Tanner Outdoor had four billboard structures on Germantown Trinity's property. Three of those billboard structures are at issue in this appeal.

On November 22, 2004, Respondent/Appellee Adworks Advertising Outdoor, LLC, ("Adworks") purchased easements in the three billboard sites from Germantown Trinity's successor-in-interest. At the time of the purchase, the billboard sites were leased to Clear Channel Outdoor, Inc., ("Clear Channel") and Clear Channel owned the three billboard structures on the property.[2] The same day that Adworks purchased the billboard easements, Adworks also applied to the Memphis and Shelby County Office of Construction Code Enforcement for permits to "rebuild" billboard structures on the sites. The requested building permits were issued on December 13, 2004. Two days later, Adworks terminated Clear Channel's leases and asked Clear Channel to remove its billboard structures from the sites. Subsequently, on May 15, 2005, Clear Channel took down its billboard structures and vacated the premises. Approximately six weeks later, Adworks erected three billboard structures of its own on the billboard sites.

On January 20, 2005, Bush, in her individual capacity as a homeowner in the Walnut Grove Woods Subdivision, filed a complaint for injunctive relief against Adworks. Bush alleged that the restrictive covenants agreement "specifically prohibit[s] the erection of any off premises advertising signs, billboards and/or commercial outdoor advertising other than those in existence on or before December 1, 1995." The complaint was later amended to include a request for declaratory relief pursuant to Tennessee Code Annotated § 29-14-101 *et seq*. In the amended complaint, Bush asked the trial court to construe the terms of the restrictive covenant and declare the parties' rights under it.

In response, Adworks filed an answer on February 22, 2005, setting forth numerous equitable and affirmative defenses, such as laches, waiver, estoppel, unclean hands, and mutual mistake. Adworks asserted as well that Bush's interpretation of the restrictive covenants agreement was incorrect. Adworks first noted that previous owners and/or tenants of the billboard sites, including

---

[1](...continued)

| | | |
|---|---|---|
| h. | Garage, commercial. | |
| i. | Lumber yard. | |
| j. | Mobile home sales. | |
| k. | Retail sales, outdoor. | |
| l. | Taxicab dispatch station. | |
| m. | Sheet metal shop. | |
| n. | Adult entertainment. | |
| o. | Topless bars and/or clubs. | |
| p. | Vehicle wash on Germantown Parkway. | |

[2]Clear Channel obtained the billboard leases and structures through a succession of acquisitions and mergers. In short, Tanner Outdoor, the original lessee of the billboard sites, was acquired by Universal Outdoor, Inc. Subsequent to this acquisition, Universal Outdoor, Inc., merged into Eller Media Company. Eller Media Company was then acquired by Clear Channel Outdoor, Inc.

Clear Channel, were permitted without objection to rebuild and/or substantially replace billboard structures located on the burdened property. Adworks also alleged that the construction of the restrictive covenants agreement proposed by Bush, if adopted, would be the result of a mutual mistake in the execution of the agreement, thereby rendering the agreement unenforceable or, in the alternative, subject to reformation. Finally, Adworks claimed that neither the language of the restrictive covenants agreement nor the intention of the parties precluded it from removing, replacing, or rebuilding billboard structures on the burdened property. In an amended answer, Adworks added a defense based on the doctrine of maintenance.

Meanwhile, on February 3, 2005, Bush filed a motion in limine asking the trial court to find, as a threshold issue, that the language in paragraph 2.a. of the restrictive covenants agreement was unambiguous. On March 11, 2005, the trial court held a hearing on Bush's motion in limine. On April 15, 2005, the trial court entered an order finding that the language of the restrictive covenant was clear and unambiguous, thus precluding parol evidence pertaining to the formation of the contract. The trial court stated, however, that its ruling did not "preclude the application of the doctrine of practical construction, which is the right to try to show that by acts or declarations of the parties subsequent to the entering into the contract, that the parties have interpreted the contract by their conduct in a fashion that may deviate from the clear and unambiguous language of the contract."

After the trial court ruled that the language of the restrictive covenants agreement was clear and unambiguous, Bush filed a motion for summary judgment. In the motion, Bush argued that Adworks violated the clear and unambiguous language of the restrictive covenants agreement by erecting three new billboard structures on the burdened property which were not "in place" as of December 1, 1995, the date referenced in the covenant. Bush contended that the restrictive covenants agreement permitted only those original billboard structures which were erected, and thus "in place," as of December 1, 1995. Since the original billboard structures were removed by Clear Channel on May 15, 2005, Bush asserted, Adworks violated the restrictive covenants agreement when it erected new billboard structures on the burdened property.

In response, Adworks filed a cross-motion for summary judgment. In its cross-motion, Adworks first asserted that the language of the restrictive covenants agreement referred to particular uses of the burdened property, and not to the presence of particular billboard structures. Adworks based this argument on the language of the introductory paragraph directly preceding the restrictive covenant in paragraph 2.a. of the agreement, which refers to "uses permitted" and "uses as designated." Adworks advocated construing the restrictive covenant so as to limit the number of billboard structures allowed on the burdened property, but to permit the continued use of the property for billboard structures, including new billboard structures, so long as the total number did not exceed the number "in place" as of December 1, 1995.

In the alternative, Adworks argued that if the trial court did not find that the clear and unambiguous language of the covenant restricted uses rather than particular structures, then the doctrine of practical construction demonstrated that the parties interpreted the contract as such. To

support this argument, Adworks asserted that, since the execution of the restrictive covenants agreement, one of Clear Channel's three billboard structures was relocated approximately 210 feet south of its original location, that another billboard structure was enlarged up to 240 square feet and enhanced with neon lighting fixtures, that all three billboard structures underwent "massive repairs" following a windstorm in the summer of 2003, and that various documents relating to the burdened property—i.e., a billboard lease agreement, a certificate of tenant, and a declaration of reservation of easements—included terms consistent with the rebuilding and relocation of the billboard structures both before and after the parties entered into the restrictive covenants agreement. From all of this, Adworks argued that conduct subsequent to the execution of the restrictive covenants agreement indicated that the parties interpreted the contract in a manner that allowed the rebuilding and relocation of billboard structures on the burdened property.

The trial court heard the parties' motions on March 3, 2006. At the hearing, arguments from counsel focused primarily on whether the parties agreed that one of Clear Channel's billboard structures was relocated after the restrictive covenants agreement was executed and, if not, whether such a factual dispute made the case inappropriate for summary judgment. At the conclusion of the hearing, the trial court rendered its ruling from the bench, stating:

> I do think that this case is just this simple. And I'm sorry that so much time, energy and money has been spent on it. I don't quite understand it. It is this simple. There is a use. That's what those signs are there for, to be used. That's what everybody understood and bargained for is we're going to have three big signs with big poles.
> And that's what they bargained that they wanted to allow to be used to permit it. And if one of them blew over, they should put it back up. It is not relevant because it has been deemed not relevant by both sides now about whether or not [one] sign was moved. You all have agreed on that. The losing side agreed on that.
> Why the winning side has consistently wanted to pursue that, I don't know. . . . But anyway, I am going to rule in favor of [Adworks] on this. I do think the language is straightforward and simple and those three signs get to remain.

Thus, the trial court found that the restrictive covenant referred to the general use of the property for billboard structures and not to the particular billboard structures themselves. This oral ruling was incorporated into a final judgment, entered on March 10, 2006, in which the trial court denied Bush's motion for summary judgment and granted summary judgment in favor of Adworks.

On appeal, Bush raises a plethora of issues. Save one, all of the issues presented arise out of the following: whether the trial court erred in not finding that the clear and unambiguous language of the restrictive covenant prohibited Adworks from erecting new billboard structures on the burdened property. In the alternative, if the restrictive covenant does not prohibit the erection of new billboard structures, Bush raises the issue of whether the restrictive covenant prohibits the construction of a billboard structure at a location on the burdened property different from the original location. In its cross-appeal, Adworks asks this Court to determine whether consideration of the doctrine of practical construction was permissible and, if this Court finds that the language of the

covenant is ambiguous, whether the trial court erred in holding that parol evidence was not admissible.

The trial court's decision on a motion for summary judgment presents a pure question of law. *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). Accordingly, our review of the decision is *de novo* upon the record and no presumption of correctness is afforded to the trial court's conclusions. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04; *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).

In assessing the evidence in the record, we "view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). We do not weigh the evidence; rather, our task is to determine if a genuine dispute exists as to any material fact. *Byrd v. Hall*, 847 S.W.2d 208, 211, 215 (Tenn. 1993). If the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion, then summary judgment is proper. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). If, however, the "mind of the court entertains any doubt whether or not a genuine issue exists as to any material fact, it is its duty to overrule the motion." *Poore v. Magnavox Co.*, 666 S.W.2d 48, 49 (Tenn. 1984).

Because the instant case involves the interpretation of a restrictive covenant, we consider well-established rules of construction and law in order to construe the terms of the covenant. *Parks v. Richardson*, 567 S.W.2d 465, 467 (Tenn. Ct. App. 1977). As with other written contracts, the primary goal is to ascertain the intention of the parties as expressed by the language of the restrictive covenant itself. *See Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998). The words of a restrictive covenant must be given their usual and ordinary meaning. *Hicks*, 978 S.W.2d at 547 (citing *Aldridge v. Morgan*, 912 S.W.2d 151, 153 (Tenn. Ct. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992)). If the "meaning of the covenant is reasonable and unambiguous, there is no need to seek further clarification outside its language." *Shea v. Sargent*, 499 S.W.2d 871, 874 (Tenn. 1973). Thus, if the language of the restrictive covenant is unambiguous, and its plain meaning is fair and reasonable, then its terms may not be altered or varied by parol evidence. *Hicks*, 978 S.W.2d at 547-48 (citations omitted).

It is also well-settled that restrictions on the free use and enjoyment of real property are not favored in Tennessee. *See, e.g., Waller v. Thomas*, 545 S.W.2d 745, 747 (Tenn. Ct. App. 1976). As such, "a restrictive covenant, being in derogation of the free use and enjoyment of property, will be strictly construed against the restriction and in favor of the reasonable use of the property, so that only uses clearly prohibited will be held precluded by such a covenant." *Parks*, 567 S.W.2d at 468 (citing *Shea*, 499 S.W.2d at 872-73; *Lowe v. Wilson*, 250 S.W.2d 366, 367 (Tenn. 1952)). Any doubt concerning the applicability of a restrictive covenant will be resolved against the restriction. *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990). Likewise, any ambiguity in the terms of the restrictive covenant will be resolved against the

restriction. *Parks*, 567 S.W.2d at 468; *see also Waller*, 545 S.W.2d at 747. Restrictive covenants "will not be extended by implication to anything not clearly and expressly prohibited by their plain terms." *Turnley v. Garfinkel*, 362 S.W.2d 921, 923 (Tenn. 1962); *see also Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 39 (Tenn. Ct. App. 1998). Nevertheless, courts are required to give a fair and reasonable meaning to the restrictive covenant, *Jones v. England*, 870 S.W.2d 525, 529 (Tenn. Ct. App. 1993), and "such restrictions, like other contracts, will be enforced according to the clearly expressed intention of the parties." *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982).

In this appeal, Bush first contends that the clear and unambiguous language in section 2.a. of the restrictive covenants agreement applies to the specific items of personalty constructed and placed on the burdened property before a defined point in time. In support of this interpretation, Bush distinguishes the language found in section 2.a. of the agreement from the language in sections 2.b. through 2.p. Section 2.a., she asserts, refers to specific personalty, i.e., the billboard structures erected on or before a certain date, while sections 2.b. through 2.p. prohibit general uses, e.g., mobile home sales, lumber yards, and agricultural uses. Parsing the language of the covenant, Bush argues that the usual and ordinary meaning of the word "billboard" denotes specific, moveable personalty. The specific, moveable property is then defined further by the phrase "not in place on December 1, 1995." Employing this analysis, Bush concludes that Adworks violated the plain language of the restrictive covenant when it removed and replaced the original three billboard structures that were placed on the burdened property on or before December 1, 1995.

As indicated above, in examining the meaning of a restrictive covenant, we look at the entire restrictive covenant to determine if the intent of the parties can be ascertained. The restrictive covenant at issue here is found in paragraph 2 of the restrictive covenants agreement, which states in full:

> 2.    The *uses permitted* shall be only those allowed by the Ordinances in Highway Commercial C-H District and in Planned Commercial C-P District less and *excepting the following uses* as designated in Chart 1 of the Zoning Ordinance and as defined and interpreted at this time by the Office of Planning and Development *which shall not be permitted*:
> a.    Off premises advertising signs, *billboards*, commercial outdoor advertising *not in place on December 1, 1995.*
> b.    Agricultural uses (listed in Chart 1 of the zoning ordinance).
> c.    Automobile parking lot.
> d.    Boat rental, storage, repair and service.
> e.    Campground, travel trailer park.
> f.    Cemetery or mausoleum.
> g.    Drive-in theater.
> h.    Garage, commercial.
> i.    Lumber yard.
> j.    Mobile home sales.

| k. | Retail sales, outdoor. |
| l. | Taxicab dispatch station. |
| m. | Sheet metal shop. |
| n. | Adult entertainment. |
| o. | Topless bars and/or clubs. |
| p. | Vehicle wash on Germantown Parkway. |

(emphasis added). We note that the first phrase in the introductory sentence of paragraph 2 sets forth the "*uses* permitted," namely, those "allowed by the Ordinances in Highway Commercial C-H District and in Planned Commercial C-P District." The second phrase in this prefatory language then enumerates the "following uses" which "shall not be permitted." Thus, the plain language of the introductory sentence sets forth "uses" that are permitted and "uses" that are not permitted.

Following the introductory sentence, then, is a list of "uses" that are not permitted. The item at issue here is in section 2.a. of the restrictive covenants agreement, "billboards." Thus, the plain language of the restrictive covenant categorizes billboards as a "use" which is not permitted. This prohibited use is then modified by the phrase "not in place on December 1, 1995," thus limiting the scope of the restriction. Therefore, the covenant, by its plain terms, restricts the use of the property to the extent that such use was "not in place on December 1, 1995." It is undisputed that, as of this date, at least three billboard structures had been erected on the property. Under the plain language of the agreement, then, the continued use of the property for three billboard structures constitutes a "use" that is permitted. Therefore, after examining the language of the restrictive covenant, including the prefatory language expressly referring to "uses" that are permitted and prohibited, we must decline Bush's interpretation of the covenant and agree with the trial court's view, finding that the language of section 2.a. is unambiguous and clearly evidences an intent to restrict the "use" of the burdened property only to the extent that it was not being used for billboard structures on December 1, 1995.

Next, it must be determined whether the restrictive covenant in section 2.a. of the agreement nonetheless prohibits Adworks from maintaining a billboard structure on a site on the burdened property different from the location of a billboard structure erected prior to December 1, 1995. It is undisputed on appeal that one of Clear Channel's billboard structures was relocated on the burdened property after the restrictive covenants agreement was executed, and that one of Adworks' new billboard structures is currently being maintained on the relocated billboard site.

Regarding this issue, Bush first contends that the trial court's construction of the restrictive covenant permits the erection of new billboard structures, but prohibits the relocation of billboard structures after December 1, 1995. After reviewing the record, which includes a transcript of the hearing on the parties' motions for summary judgment as well as the final judgment, we must disagree. The trial court stated only that the "language [of the covenant] is straightforward and simple and those three signs get to remain." Regarding the relocation issue, the trial court deemed that fact immaterial for purposes of its interpretation of the covenant based solely on the language of the instrument. Following its oral ruling, the trial court simply entered a final judgment,

incorporating its oral findings and granting summary judgment in favor of Adworks. Therefore, nothing in the appellate record indicates that the trial court construed the covenant as Bush proposes.

In the alternative, Bush contends that the language of the restrictive covenants agreement clearly prohibits the relocation of a billboard structure on the burdened property. In section 2.a. of the agreement, the restricted use is qualified, in part, by the idiom "in place." The word "place," standing alone, could indeed be seen as referring to "a particular . . . location." Merriam Webster's Collegiate Dictionary 887 (10th ed. 1995). We must, however, consider the context in which it is placed. Again, reading the restrictive covenant as a whole, we consider the prefatory language expressly referring to permitted and prohibited "uses." The phrase "in place," coupled with the language directly following it, "on December 1, 1995," clearly defines the scope of the permitted *use*. Therefore, we decline to adopt Bush's construction of the restrictive covenant, and hold that the restrictive covenant in section 2.a. of the agreement does not restrict the three permitted billboard structures to particular locations on the burdened property.

Therefore, there are no remaining genuine issues of material fact and the trial court did not err in holding that Adworks is entitled to a judgment as a matter of law. All other issues raised on appeal are pretermitted.

The decision of the trial court is affirmed, and the costs of this appeal are assessed against Petitioner/Appellant Linda Bush, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE