# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 21, 2010 Session

## JOHN ALLEN CONSTRUCTION, LLC
### v.
## JEROME HANCOCK, SANDRA HANCOCK, and CARROLL BANK AND TRUST

**Appeal from the Chancery Court for Benton County**
**No. 00-195     Ron Harmon, Chancellor**

---

**No. W2008-02785-COA-R3-CV - Filed March 31, 2010**

---

This is a construction case. The defendant landowners entered into an oral contract with the plaintiff contractor to construct a house. When the house was substantially completed, the homeowners terminated the builder, citing defective work. At the time of termination, there were two unpaid invoices. After filing a notice of lien on the landowners' property, the contractor filed suit for breach of contract and to enforce the lien. The landowners counterclaimed for breach of contract and sought damages stemming from the defective work. After a trial, the trial court entered judgment for the contractor and awarded a portion of the amount sought. The trial court's order did not address enforcement of the contractor's lien. The landowners appeal. Because the trial court's order does not address, among other things, enforcement of the lien, it is not a final judgment, and this Court does not have jurisdiction over the appeal. Therefore, we dismiss the appeal and remand the case to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed and Case Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J, joined.

J. Brad Scarbrough, Brentwood, Tennessee, for the Defendant/Appellants, Jerome Hancock and Sandra Hancock

John W. Whitworth, Camden, Tennessee, for the Plaintiff/Appellee, John Allen Construction, LLC

**MEMORANDUM OPINION**[1]

**FACTS AND PROCEEDINGS BELOW**

This is the second appeal in a case adjudicating a dispute arising from an oral contract to construct a home. *See John Allen Constr., LLC v. Hancock*, No. W2004-02920-COA-R3-CV, 2006 WL 473732 (Tenn. Ct. App. Mar. 1, 2006).

In August 1999, Defendant/Appellants Jerome Hancock ("Mr. Hancock") and his wife Sandra Hancock ("Mrs. Hancock," collectively "Hancocks") contacted John Allen ("Mr. Allen"), the managing member of Plaintiff/Appellee John Allen Construction, LLC,[2] to inquire about the construction of a house on their property. The Hancocks owned a nearly one acre unimproved tract of land in Big Sandy, Tennessee. The tract includes a steep hill facing a lake, and the Hancocks wanted a luxury lakeside home constructed on the slope of the hill.

Mr. Allen is a second generation carpenter who has worked in the construction industry throughout his career. In 1991, he obtained his contractor's license and founded his own construction company, performing commercial and residential work. Despite the fact that Mr. Allen's work included the "niche market" of custom lakeside homes, when he was contacted by Mr. Hancock, Mr. Allen's contractor's license was limited to projects costing $110,000 or less.

Not long after their initial contact, Mr. Hancock and Mr. Allen met on Mr. Hancock's lakefront property to discuss the construction project. Mr. Hancock brought a house plan catalogue to the meeting to show Mr. Allen the type of house he wanted to have constructed on the lot. After examining the basic floor plan in the catalogue, Mr. Allen told Mr. Hancock that he could construct the house in the plan. At Mr. Hancock's direction, Mr. Allen then ordered the complete house plan from the catalogue.

---

[1]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

TENN. CT. APP. R. 10.

[2]This Opinion will use "Mr. Allen" in reference to both John Allen and John Allen Construction, LLC.

The next month, September 1999, Mr. Allen met with Mr. Hancock and Mrs. Hancock. They toured houses that Mr. Allen was constructing at the time, and then went to Mr. Allen's home to discuss the construction of the Hancocks' lakefront house. At this second meeting, the parties reached the agreement central to this dispute. After making some modifications to the house plans,[3] the parties entered into an oral agreement that Mr. Allen would build the house for the Hancocks, anticipating that construction would be completed by May 2000. Under the oral agreement, the parties agreed that Mr. Allen would bill the Hancocks monthly for the cost of his materials and labor plus an eight percent profit. There was some discussion of the cost of construction totaling $250,000.

In October 1999, construction of the Hancocks' house began. The side of the hill was cut so as to allow the side of the house facing the lake to stand three stories high, with two stories on the opposite side, or "streetside." Concrete footings were poured, and the walls of the house were made from concrete poured into commercially designed Styrofoam molds. Later, a wooden flooring system was installed and connected to the concrete walls, and a conventional roof was erected over the structure.

As a prerequisite to obtaining financing for construction near the end of 1999, Mr. Hancock obtained an insurance policy with coverage in the amount of $250,000, with coverage beginning in January 2000. In December 1999, Mr. Hancock apparently obtained a $300,000 loan, secured by a deed of trust, from Carroll Bank and Trust to finance the construction. In February 2000, Mr. Allen had the monetary limit on his contractor's license raised from $110,000 to $900,000.

Meanwhile, construction on the house continued. Each month, Mr. Allen sent an itemized billing statement to the Hancocks detailing the material and labor expenses for the preceding month. For each monthly statement, Mr. Allen attached photocopies of the material suppliers' invoices that he had paid and time sheets showing the labor costs for his workers. Each monthly statement also contained the agreed-upon eight percent profit. The Hancocks timely paid each billing statement through the summer of 2000.

By May 2000, the billing statements totaled over $175,000,[4] but the construction was not completed. Dismayed at the perceived delay and ballooning cost, Mr. Hancock met with Mr. Allen to discuss the status of the construction. At the May 2000 meeting, Mr. Allen

---

[3]The parties' testimony conflicts as to whether Mr. Allen had received the complete plans by the time the September 1999 meeting occurred.

[4]This number is derived from the billing statements for December 1999 through May 2000 contained in the record.

acknowledged that the project was taking longer than anticipated. When pressed by Mr. Hancock for a total cost of completion, Mr. Allen estimated that it would take an additional $100,000 to finish the house. After the meeting, the parties continued as they had previously: Mr. Allen continued construction and monthly billing, and the Hancocks timely paid his invoice each month.

In July 2000, workers installing drywall in the interior of the house told Mr. Hancock that they had encountered difficulties in the kitchen stemming from problems related to the construction of the ceiling. After that, Mr. Hancock met with Mr. Allen to discuss the kitchen and another issue pertaining to the position of a window in the study. After the meeting, Mr. Allen addressed Mr. Hancock's concerns by reinforcing ceiling joists in the kitchen and adjusting the study window to ensure that it lay in a straight plane with the wall. Construction continued.

In September 2000, Mr. Hancock terminated Mr. Allen's services. At the time, construction on the house was substantially complete. By the time Mr. Allen was dismissed, Mr. Hancock had paid him over $250,000.[5] Mr. Hancock refused to pay Mr. Allen's outstanding billing statements for September and October 2000, totaling $71,092.50.

Two weeks after terminating Mr. Allen, the Hancocks hired a new contractor to complete construction of the house. This process took some nine months. While construction of the house was being completed, several alleged deficiencies in Mr. Allen's work were brought to the Hancocks' attention.[6] To repair and correct some of the perceived deficiencies, the Hancocks hired several contractors. In June 2001, the Hancocks moved into the house. Meanwhile, the Hancocks did not pay Mr. Allen the amount he claimed was due and owing under their agreement.

---

[5]The parties do not agree on the exact amount Mr. Hancock had paid Mr. Allen prior to termination. Mr. Allen testified that Mr. Hancock had paid him $291,542.81. Mr. Hancock testified that he had paid $279,226.86 to Mr. Allen, along with other amounts paid directly to various material suppliers, for a total of $313,537 expended on construction of the house.

[6]Among other things, the Hancocks alleged the following deficiencies in Mr. Allen's work: the "streetside" exterior wall was susceptible to caving in under the pressure of the backfill against it; the septic tank overflowed into the lawn; the concrete walls in the lowest level had gaps from improper consolidation when the concrete was poured into the Styrofoam molds; the electrical wiring was not properly installed; the concrete footing was too small; the patio on the lakeside could not support itself; and the two lower levels were not properly waterproofed.

After filing a notice of lien on the Hancocks' property, Mr. Allen filed the instant lawsuit on December 5, 2000 against the Hancocks as well as Carroll Bank and Trust.[7]  In the complaint, Mr. Allen sought a judgment of $71,092.50 plus interest for the amount allegedly due under the parties' contract.  The complaint also sought the following relief:

> 3.  That to secure the payment due [Mr. Allen] and to enforce [Mr. Allen's] Lien upon said real property, an attachment issue and be levied on the real property described in this Complaint;
> 4.  That the real property described in this Complaint be sold by the Court free and clear of the interest of the Defendant Carroll Bank and Trust.
> 5.  That the proceeds of said sale be applied first, to the expenses of sale, second, to the satisfaction of the judgment sought herein, third, to the lien of Defendant Carroll Bank and Trust, with any remainder to be paid to the Defendant Hancock.

Thus, Mr. Allen sought damages for the invoiced amounts, plus interest, and sought to enforce the lien that he had filed on the Hancocks' property.  The Hancocks answered the complaint and asserted a counterclaim, seeking compensatory and consequential damages for Mr. Allen's alleged deficient work and his failure to timely complete construction.[8]  Mr. Allen answered the counterclaim and denied the Hancocks' allegations. Extensive discovery ensued.

In January and February 2004, the trial court conducted a four-day bench trial.  Mr. Allen and Mr. Hancock testified extensively.  Nearly twenty other witnesses testified as well, including engineering experts and many of the workers who completed construction of the Hancocks' house after Mr. Allen was dismissed from the job site.  One hundred and nine exhibits were entered into evidence.

At the close of the hearing, the trial court took the matter under advisement.  On November 8 , 2004, the trial court entered a concise order awarding a judgment of $21,612 to Mr. Allen.  The order simply stated:

---

[7]We note that the record contains no indication that Carroll Bank and Trust was ever served with  the complaint or appeared in this matter.  Moreover, Carroll Bank and Trust is not included in the certificates of service on the pleadings in the record.

[8]The Hancocks later amended their counterclaim to add claims for deficient work discovered after filing the initial counterclaim.

> Upon statements of counsel, testimony of parties, and witnesses, and post trial briefs, the Court finds that the Plaintiff, John Allen Construction, LLC., is due an unpaid bill from the Defendants, Jerome Hancock and wife Sandra Hancock, in the amount of $71,092.00.
>
> The Court further finds that profits added to said bill in the amount of $5,680.00 and credits for money spent by the Defendants in the amount of $43,800.00 should be credited against said debt.

Thus, after considering all of the testimony and evidence, the trial court determined that Mr. Allen was entitled to the amount due on the unpaid billing statements, minus Mr. Allen's profits and minus a portion of the sum that the Hancocks had expended for remedial work. The net result was a $21,612 judgment in favor of Mr. Allen.

The Hancocks timely appealed. In the first appeal, this Court vacated the judgment and remanded the matter to the trial court for findings of fact and conclusions of law sufficient to permit appellate review. *John Allen Constr., LLC v. Hancock*, No. W2004-02920-COA-R3-CV, 2006 WL 473732, at *6 (Tenn. Ct. App. Mar. 1, 2006).

On November 24, 2008, as requested, the trial court entered a seven page order, amending the November 2004 order and including detailed findings of fact and conclusions of law. As with the prior order, it awarded the same $21,612 judgment to Mr. Allen, consisting of an award to Mr. Allen for the amount due on the unpaid billing statements - $71,092 - reduced by the exclusion of his profits on those unpaid statements - $5680 - and several credits to the Hancocks for remedial work - $43,800.[9] The order did not address Mr. Allen's request for interest on the judgment and did not address enforcement of Mr. Allen's lien.

---

[9]In the order, the trial court found that the parties had entered into an oral cost plus contract with an agreed upon eight percent profit. The contract did not include an agreement on the total cost to be paid for construction. At the time of termination, there were outstanding bills totaling $71,092.50 due under the contract, and Mr. Allen was entitled to a judgment for the amount owed. Because the anticipated cost of constructing the Hancocks' house exceeded Mr. Allen's license limit at the inception of construction, the trial court held Mr. Allen was only entitled to recover his "direct costs and expenses." Thus, the trial court excluded the $5680 in profit from the final award to Mr. Allen.

Regarding the cornucopia of alleged deficiencies in Mr. Allen's work, the trial court found that "some problems [the Hancocks] were experiencing in the construction were genuine and some were merely perceived, however they [the Hancocks] found fertile soil with the third party tradesmen and engineers" hired after Mr. Allen's termination. Noting that the parties agreed that some of Mr. Allen's work was defective, the trial court then discussed several disputed deficiencies. Ultimately, the trial court determined that some, but not all, of the allegations made by the Hancocks were genuine deficiencies in Mr. Allen's work. Accordingly, the trial court offset the award to Mr. Allen by $43,800 that the Hancocks' had expended to correct specific deficiencies in Mr. Allen's work.

From this order, the Hancocks now appeal.

ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Hancocks raise the following issues:

1) Whether the trial court erred in allowing Mr. Allen to recover more than actual documented expenses due to his unlicensed contracting under Tennessee Code Annotated § 62-6-101, *et seq.*;
2) Whether the trial court erred in awarding Mr. Allen any sums whatsoever due to his breach of contract and defective workmanship;
3) Whether the trial court erred in entering a judgment for Mr. Allen and not entering a judgment for the Hancocks for damages due to Mr. Allen's breach of contract and defective workmanship; and
4) Whether Mr. Allen's lien against the Hancocks' property should be discharged.

Mr. Allen raises the following additional issues for review:

1) Whether the trial court improperly disallowed Mr. Allen's unpaid profits of $5680; and
2) Whether the trial court allowed the Hancocks unauthorized credits against amounts due Mr. Allen considering the Hancocks' denial of Mr. Allen's opportunity to make any necessary repairs.

Since this case was tried by the trial court sitting without a jury, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates to the contrary. TENN. R. APP. P. 13(d); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005). We review the trial court's conclusions of law *de novo,* with no presumption of correctness. *Nashville Ford Tractor, Inc.*, 194 S.W.3d at 425 (citing *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); *Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998); *McCormick v. Aabakus, Inc.*, 101 S.W.3d 60, 62 (Tenn. Sp. Workers Comp. Panel 2000)).

In reviewing testimony, we give great weight to the trial court's assessment of the witnesses' credibility. *Columbus Med. Servs., LLC v. Thomas*, No. W2008-00345-COA-R3-CV, 2009 WL 2462428, at *14 (Tenn. Ct. App. Aug. 13, 2009), *perm. app. denied* Mar. 1, 2010 (citing *C&W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676 (Tenn. Ct. App. 2007)). This deference is owed because "the court had the opportunity to hear the testimony and observe

-7-

the demeanor of the witnesses." *Id.* (citing *C&W Asset Acquisition, LLC*, 230 S.W.3d at 676). Accordingly, "we will not reevaluate a trial court's factual findings based on witness credibility absent clear and convincing evidence to the contrary." *Id.* (citing *C&W Asset Acquisition, LLC*, 230 S.W.3d at 676; *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999)).

## ANALYSIS

As a threshold issue, this Court must determine whether it has subject matter jurisdiction to hear this appeal. *See* TENN. R. APP. P. 13(b); *Christus Gardens, Inc. v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, No. M2007-01104-COA-R3-CV, 2008 WL 3833613, at *3 (Tenn. Ct. App. Aug. 15, 2008), *no perm. app.* "Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996) (citing *Landers v. Jones*, 872 S.W.2d 674 (Tenn.1994)).

This Court "does not have subject matter jurisdiction over orders that are not final, unless otherwise provided by statute or the Rules of Appellate Procedure." *City of Jackson v. Hersh*, No. W2008-02360-COA-R3-CV, 2009 WL 2601380, at *3 (Tenn. Ct. App. Aug. 25, 2009), *no perm. app.* (citing *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn.1990)). Rule 3 of the Tennessee Rules of Appellate Procedure provides that "[e]xcept as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not" final and appealable. TENN. R. APP. P. 3(a); *accord Grand Valley Lakes Prop. Owners' Assoc., Inc. v. Gunn*, No. W2008-01116-COA-R3-CV, 2009 WL 981697, at *3 (Tenn. Ct. App. Apr. 13, 2009), *no perm. app.* Rule 10 of the Tennessee Rules of Appellate Procedure is an additional exception.[10] In the case at bar, this Court has not granted permission to appeal pursuant to

---

[10]T.R.A.P. Rule 10 provides in pertinent part:

> **(a) Original Application for Extraordinary Appeal; Grounds.** An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

(continued...)

T.R.A.P. Rules 9[11] or 10, and the trial court's order was not made final pursuant to T.R.C.P. Rule 54.02.[12] Thus, this Court has jurisdiction over this appeal only if the order from which

---

[10](...continued)
TENN. R. APP. P. 10(a).


[11]T.R.A.P. Rule 9 provides in pertinent part:

> **(a) Application for Permission to Appeal; Grounds.** Except as provided in rule 10, an appeal by permission may be taken from an interlocutory order of a trial court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals only upon application and in the discretion of the trial and appellate court. In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the courts' discretion, indicate the character of the reasons that will be considered: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment. Failure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment.

TENN. R. APP. P. 9(a).


[12]Rule 54.02 of the Tennessee Rules of Civil Procedure provides:

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

TENN. R. CIV. P. 54.02.

the Hancocks appeal is a final order that adjudicates all claims for relief. *See* TENN. R. APP. P. 3(a).

In the complaint, Mr. Allen sought a judgment for the amount allegedly due under the parties' contract, plus interest. Mr. Allen also sought to enforce the lien that he had filed on the Hancocks' property, requesting that attachment issue and be levied on the Hancock's property, and seeking judicial sale of the property to satisfy the debt. In the order of November 2008, the trial court granted a judgment to Mr. Allen for his unpaid bills; however, the order does not address either the request to enforce the lien or the request for interest on the judgment.

*Young v. Brown*, No. 01A01-9310-CH-00440, 1994 WL 196433 (Tenn. Ct. App. May 20, 1994), involved a similar scenario. In *Young*, the plaintiff subcontractor filed a lien on the defendant landowners' property. The subcontractor then filed a lawsuit seeking a money judgment and enforcement of the lien. After a bench trial, the trial court entered an order awarding a money judgment to the subcontractor. The order also granted a lien, stating that "[a] lien for $4,948.13 is granted against the property of [landowners], for which execution may issue if necessary." However, the order did not contain any provisions regarding the enforcement of the lien *Id.* at *1. The landowners appealed.

On appeal, referring to T.R.A.P. 3(a), this Court concluded that it did not have jurisdiction because the order was "simply not a final decree for a suit to enforce a mechanic's lien." *Id.* The Court noted that the order granted a lien and authorized execution to issue, proper provisions for the enforcement of a money judgment. However, the Court found that the failure to adjudicate the enforcement of the lien and provisions pertinent to such enforcement meant that the order was not a final judgment. The appellate court stated that "[t]he decree should provide that the amount due on the contract is a lien on the property and if the debt is not paid within a certain time, should order the clerk and master to sell the property and pay the debt and costs out of the proceeds." *Id.* Consequently, the Court dismissed the appeal and remanded the case to the trial court for further proceedings.

In the case at bar, as with the *Young* subcontractor, Mr. Allen sought a money judgment as well as enforcement of a lien. Mr. Allen also sought interest on the judgment. As in *Young*, the trial court awarded a money judgment but did not adjudicate the enforcement of the lien or include any provisions for such enforcement. The order also fails to address Mr. Allen's request for interest on the judgment. As did the court in *Young*, we must conclude that the order from which the parties appeal is not a final order, and that we do not have jurisdiction over this appeal.

Particularly in light of the fact that this is the second appeal in this cause, "[w]e would like nothing more than to bring about a final resolution of this litigation. Alas, it is not to be." **Gunn**, 2009 WL 981697, at *4. We must dismiss the appeal and remand the matter to the trial court.[13]

### CONCLUSION

The appeal is dismissed, and the case is remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed one-half to the Appellants, Jerome Hancock and Sandra Hancock, and their surety, and one-half to Appellee John Allen Construction, LLC, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[13]In the first appeal, this Court failed to note that the trial court's "final order," like the order that is the subject of this appeal, did not address enforcement of Mr. Allen's lien, pre-judgment interest or post-judgment interest. For that, a sincere *mea culpa* to the trial court and the parties for this oversight is in order. However, once this Court realizes that the order being appealed is not final and appealable, there is little choice but to dismiss the appeal for lack of jurisdiction.