# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

November 24, 1998

Cecil W. Crowson
Appellate Court Clerk

MAPLES HOMEOWNERS )
ASSOCIATION, INC., )
)
    Plaintiff/Appellee, )
)   Sumner Chancery
VS. )   No. 95C-293
)
T & R NASHVILLE LIMITED )   Appeal No.
PARTNERSHIP, )   01A01-9608-CH-00368
)
    Defendant/Appellant. )


APPEAL FROM THE CHANCERY COURT FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE


THE HONORABLE THOMAS E. GRAY, CHANCELLOR


For Plaintiff/Appellee:                         For Defendant/Appellant:

Keith C. Dennen                              Kenneth F. Scott
James C. Bradshaw                          Tune, Entrekin & White
Wyatt, Tarrant & Combs                  Nashville, Tennessee
Hendersonville, Tennessee


## REVERSED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a dispute concerning the interpretation of the declarations of a planned unit development in Sumner County. After the owner of a rental apartment complex in the planned unit development recorded conflicting declarations, the development's homeowners association filed suit in the Chancery Court for Sumner County seeking declaratory and injunctive relief. On cross motions for summary judgment, the trial court held that the development's declarations required the owner of the rental apartment complex to record declarations and that the rental apartment complex's declarations were inconsistent with the development's declarations. The owner of the rental apartment complex asserts on this appeal that the trial court misinterpreted the development's declarations and that it was not required to record declarations of its own. We agree and hold that the owner of the rental apartment complex, not the homeowners association, is entitled to a judgment as a matter of law. Therefore, we reverse the summary judgment for the homeowners association.

## I.

Music City Land Development, Inc. acquired two tracts of property in Sumner County amounting to approximately twenty-eight acres to develop a planned unit development called The Maples. In July 1975, it recorded an "Amended Declaration of Covenants, Conditions and Restrictions" for the entire development ("Maples Declarations") as required by the Horizontal Property Act [Tenn. Code Ann. §§ 66-27-101, -123 (1993)]. These declarations anticipated future development of property in The Maples, and accordingly, Article VII(2) provides, in part:

> Any developer of a multi-family complex shall as a
> condition precedent to the development of the same cause
> to be prepared covenants and restrictions of the type and
> nature which may be enforced in a court of equity for the
> benefit of all of the residents of said multi-family complex.

The remainder of Article VII(2) deals with the contents, duration, approval, and recordation of the covenants required by Article VII(2)

The Maples Declarations contain a fairly standard set of land use restrictions as well as a mechanism for their enforcement. They establish a homeowners association whose membership consists of the "owners of lots" in The Maples,[1] and Article VII(1) provides, in part:

> The Association, or any Owner, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereinafter imposed by the provisions of this Declaration.

In December 1993, T & R Nashville Ltd. Partnership ("T & R") purchased approximately thirteen acres of property in The Maples and constructed an apartment complex containing 160 rental apartments called the Waterview Apartments. The homeowners association decided that the Waterview Apartments was a "multi-family complex" for the purpose of Article VII(2) and sometime in 1995 requested T & R to prepare and record restrictions covering the Waterview Apartments. T & R at first resisted this request because it believed that the term "multi-family complex" in Article VII(2) meant condominium units, not rental apartments.

The Maples homeowners association continued to press the issue. Finally, in September 1995, T & R mailed the homeowners association a copy of a set of declarations it intended to record in the office of the Sumner County Register of Deeds ("Waterview Declarations"). Section 3, the enforcement provision of the Waterview Declarations, provides:

> Enforcement of these Covenants and Restrictions shall be by any proceeding at law or in equity against any person or persons violating or attempting to violate any covenant or restrictions, either to restrain the violation or to recover damages. These Covenants and Restrictions are intended to benefit the Residents, the Owner or future owners of the Apartments. The Owner is the only person entitled to enforce these Covenants and Restrictions. No third person or entity is entitled to do so. Failure by Owner to enforce any Covenant or Restriction herein contained shall in no event be deemed a waiver of the right to do so

---

[1] *See* Maples Declarations, Art. III(B). The declarations define "lot" as "any plot of land shown upon any recorded subdivision map of the Properties with the exception of the Common Area," Maples Declarations, Art. I(5), and define "owner" as "the record owner . . . of a fee simple title to any Lot which is part of the Properties . . . ." Maples Declarations, Art. I(2).

thereafter. In no event shall Owner have any liability to any Resident or any third party by virtue of the failure to enforce any Covenant or Restriction herein contained.

In its transmittal letter, T & R reiterated its belief that Article VII(2) did not require it to file declarations and that neither the homeowners association nor the other lot owners in The Maples could proceed directly against the Waterview Apartment's tenants for violations of either the Maples Declarations or the Waterview Declarations. T & R recorded the Waterview Declarations on September 8, 1995.

On October 6, 1995, the homeowners association filed suit in the Chancery Court for Sumner County seeking a declaration that Section 3 of the Waterview Declarations was inconsistent with Article VII(1) of the Maples Declarations and requesting the court to order T & R to conform the Waterview Declarations to the Maples Declarations. Ultimately, both parties filed cross-motions for summary judgment based on their respective interpretations of the Maples Declarations. On June 26, 1996, the trial court granted the homeowners association's motion for summary judgment. The trial court concluded, as a matter of law, (1) that the Maples Declarations applied to the Waterview Apartments, (2) that the Waterview Apartments was a "multi-family complex" for the purpose of Article VII(1) of the Maples Covenants, (3) that the Maples Declarations required T & R to record declarations for the Waterview Apartments, and (4) that Article VII(1) of the Maples Declarations permitted the homeowners association or any other lot owner in The Maples to enforce the Waterview Declarations directly against tenants living in the Waterview Apartments.

## II.

The pivotal issue on this appeal involves an interpretation of the Maples Declarations. T & R asserts that the Waterview Apartments is not a "multi-family complex" and, therefore, that Article VII(2) does not require it to prepare declarations. If T & R is correct, then the issue concerning whether the homeowners association or the other lot owners in The Maples may enforce the Waterview declarations must be decided in T & R's favor.

-4-

## A.

Covenants, conditions, and restrictions such as the ones contained in the Maples Declarations are property interests that run with the land. *See Turnley v. Garfinkel*, 211 Tenn. 125, 130, 362 S.W.2d 921, 923 (1962). They arise, however, from a series of overlapping contractual transactions. *See* Restatement (Third) of Property: Servitudes § 4.1 cmt. c (Tentative Draft No. 4, 1994). Accordingly, they should be viewed as contracts, *see Clem v. Christole*, 582 N.E.2d 780, 782 (Ind. 1991); *Russell v. Williams*, 964 P.2d 231, 234 (Okla. Ct. App. 1998); *Houck v. Rivers*, 450 S.E.2d 106, 108 (S.C. Ct. App. 1994); *Shafer v. Board of Trustees of Sandy Hook Yacht Club Estates, Inc.*, 883 P.2d 1387, 1392-93 (Wash. Ct. App. 1994), and they should be construed using the rules of construction generally applicable to the construction of other contracts. *See Xinos v. Village of Oak Brook*, 698 N.E.2d 667, 669 (Ill. App. Ct. 1998); *Hoag v. McBride & Son Inv. Co.*, 967 S.W.2d 157, 169 (Mo. Ct. App. 1998); *Toavs v. Sayre*, 934 P.2d 165, 166 (Mont. 1997); *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998).

The courts enforce restrictions according to the clearly expressed intentions of the parties manifested in the restrictions themselves. *See Lapray v. Smith*, 804 S.W.2d 87, 89 (Tenn. Ct. App. 1990); *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982). We give the terms used in restrictions their fair and reasonable meaning, *see Parks v. Richardson*, 567 S.W.2d 465, 467-68 (Tenn. Ct. App. 1977), and we decline to extend them beyond their clearly expressed scope. *See Central Drug Store v. Adams*, 184 Tenn. 541, 545-46, 201 S.W.2d 682, 684 (1947); *Hamilton v. Broyles*, 57 Tenn. App. 116, 123-24, 415 S.W.2d 352, 355 (1966). We also construe the terms of a restriction in light of the context in which they appear. *See Hillis v. Powers*, 875 S.W.2d 273, 276 (Tenn. Ct. App. 1993).

When the restriction's terms are capable of more than one construction, we should adopt the construction that advances the unrestricted use of the property. *See Southern Advertising Co., Inc. v. Sherman*, 43 Tenn. App. 323, 327, 308 S.W.2d 491, 493 (1957). We should also resolve ambiguities in the restrictions against the party who drafted them, see *Maxwell v. Land Developers, Inc.*, 485 S.W.2d 869, 874 (Tenn. Ct. App. 1972), and finally we should resolve all doubts concerning a

covenant's applicability against applying the covenant. *See Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990).

**B.**

The Maples Declarations do not define "multi-family complex," and thus we must look to other portions of the document to garner meaning for the phrase. The declarations require that all the lots in this planned unit development must be "used for residential purposes exclusively" and provide that the lots may contain either "single family residential units" or "residential units within a multi-family unit structure or complex." The present dispute does not involve single family residences.

The declarations envision two varieties of multi-family complexes. The first includes multi-family complexes in which persons own the residential units (i.e., a condominium complex). The second includes multi-family complexes in which the residential units are leased to tenants (i.e., an apartment complex). The issue to be decided is whether the phrase "multi-family complex" as it is used in Article VII(2) includes both condominium complexes and apartment complexes.

When Article VII(2) is read in its entirety, the only conclusion to be drawn is that the "covenants and restrictions" to which it refers are those required to be filed by the Horizontal Property Act. *See* Tenn. Code Ann. §§ 66-27-102(10), -107(a). The reason for this conclusion is straightforward. Article VII(2) requires that these covenants and restrictions shall be "subject to amendment by approval of two-thirds ( ) of the unit owners of the complex." Condominiums have unit owners, but leased apartments do not. Accordingly, by making amendments to the covenants and restrictions in Article VII(2) subject to approval by the "unit owners," these covenants and restrictions could only be those associated with a condominium complex. Accordingly, the only construction of the phrase "multi-family complex" in Article VII(2) that is consistent with the remainder of the article's language is that it means a condominium complex.

Based on our interpretation of Article VII(2), the trial court erred by construing Article VII(2) to require T & R to prepare and record declarations and covenants

because the Waterview Apartments is not a condominium complex. Since the Maples Declarations do not require the preparation or filing of the Waterview Declarations, it also follows that Article VII(1) of the Maples Declarations does not give the Maples Homeowners Association the authority to enforce the Waterview Declarations.

## III.

We reverse the summary judgment for the Maples Homeowners Association and remand the case to the trial court for the purpose of entering an order granting a summary judgment to T & R Nashville Limited Partnership. We tax the costs of this appeal to the Maples Homeowners Association, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE