IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 17, 2013 Session

## RCK JOINT VENTURE, (A JOINT VENTURE COMPRISED OF RIVER ROAD CONSTRUCTION, LLC, CREATIVE HOMES, LLC AND KEYSTONE HOMES OF TN, INC.) v. GARRISON COVE HOMEOWNERS ASSOCIATION, A TENNESSEE NONPROFIT CORPORATION

Appeal from the Chancery Court for Rutherford County
No. 071586CV     Robert E. Corlew, III, Judge

_____

No. M2013-00630-COA-R3-CV - Filed April 22, 2014

_____

The only issue in this appeal is whether two property owners in a subdivision are entitled to an award of attorney fees for prevailing in a third-party action brought against them by the homeowners association to enforce restrictive covenants. The association argued that the property owners were not entitled to attorney fees because they did not prevail on every issue that came up during litigation, because the attorney fee provision in the restrictive covenants could be read to mean that no such award could be made if additional damages were not also awarded, and because they did not personally pay their own attorney fees. The trial court agreed with those arguments and denied the motion for attorney fees. We reverse the trial court and remand the case for a determination of the amount of the attorney fee award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Reversed and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT, J. joined. RICHARD H. DINKINS, J., filed a dissenting opinion.

L. Gilbert Anglin, Murfreesboro, Tennessee, for the appellant(s), RCK Joint Venture, (a joint venture comprised of River Road Construction, LLC, Creative Homes, LLC and Keystone Homes of TN, Inc.).

Rodney M. Scott, Murfreesboro, Tennessee, for the appellee, Garrison Cove Homeowners Association, a Tennessee Nonprofit Corporation.

## OPINION

## I. PROCEEDINGS IN TRIAL COURT

The following recitation of facts is derived from the Petition for Writ of Certiorari, filed in the Chancery Court of Rutherford County on October 10, 2007. The petitioner, RCK Joint Venture, described itself as a joint venture comprised of a construction company and two limited liability companies. RCK owned a thirty-four acre tract of land in Rutherford County, upon which it wished to build a residential subdivision to be called "The Villas at Twin Oaks."

RCK applied for a permit to begin development on the property. According to its petition, it did everything it was legally required to do to in order to obtain approval of its permit. Among other things, it consulted with the County's Planning and Engineering staff and submitted a preliminary plat and construction drawings for a roadway in the subdivision, and for drainage construction and erosion control. It then submitted its plans to the Rutherford County Regional Planning Commission.

During the Planning Commission meeting of October 7, 2007, the County Engineer advised the Commission that RCK had met all the applicable regulations. Nonetheless, the Commission denied the application. RCK filed its Petition for Writ of Certiorari three days later, claiming that the Commission had acted illegally, arbitrarily and capriciously, and without material evidence to support its decision.

Garrison Cove subdivision borders the proposed Twin Oaks subdivision. On November 26, 2007, the Garrison Cove Homeowners Association filed a Motion to Intervene in the certiorari proceeding and sought to bring a counter-complaint against RCK. The Association maintains the upkeep and oversees certain matters in the Garrison Cove subdivision. In its motion, the Association noted that RCK included in its plat a thirty-foot wide easement for utilities to run through one of the Garrison Cove lots. The Association complained that the creation of the easement was an "improper and illegal attempt to alter the plat of Garrison Cove," which might impair its ability to protect the interests of its member homeowners.

The Association also noted that two of its own members, Robert and Melinda Patton, had granted RCK the disputed easement across their property on Lot 188 of the Garrison Cove subdivision. The Association asserted that the grant of the easement violated the restrictive covenants that bind the Pattons and other Garrison Cove property owners, and it named the Pattons as third party defendants. It also asserted a claim against RCK for inducing the Pattons to breach their contract with the Association.

The Association asked the trial court for a declaratory judgment that the easement was illegal under Tenn. Code Ann. § 13-4-302, which governs the submission and approval of subdivision plats,[1] as well as for a permanent injunction against the use of the easement and to dismiss the petition for certiorari in its entirety. The Association also asked the court to award it all its costs against all Petitioners and Third Party Defendants, as well as "attorneys fees under Section 23 of the Declaration of Covenants, Conditions and Restrictions of Garrison Code Subdivision, against Third Party Defendants Robert S. Patton and Melinda L. Patton, expended by GCHOA in the prosecution of this matter." The trial court granted the Association's Motion to Intervene on December 20, 2007, and allowed it to enter its counter-complaint and its third party complaint against the Pattons.

The Pattons answered the Association's claims against them and counterclaimed. They asserted that the Association had no jurisdiction over the section of Garrison Cove where their lot was located and that it therefore lacked standing to challenge their actions. They also contended that the Association was guilty of intentional misrepresentation, negligent misrepresentation, and libel of title, and they asked for the return of all the dues they had paid to the Association since they purchased lot 188 in February of 2004.

The third party complaint and counterclaim were tried over three days during a four month period. On May 3, 2011, the trial court entered an order and a detailed memorandum that included findings of fact and conclusions of law. The court held that the Homeowners Association did have standing to challenge the actions of RCK and the Pattons, and that Lot 188 was subject to the provisions of the Association's restrictive covenants. It also held, however, that the attempt to establish an easement across Lot 188 was not in violation of State or Local Law, nor was it a violation of the restrictive covenants.

The trial court accordingly dismissed the intervening claims of the Homeowners Association as well as the Pattons' claims against the Association, including their request for the return of the dues they had paid. The court also declared that while the remaining issues involving the Planning Commission and RCK would be considered at a later hearing, its decision on the intervening complaint and counterclaims was final for purposes of appeal under Tenn. R. Civ. P. 54.02, "there being no just reason for delay."

---

[1]The Association alleged that the recording of the easement amounted to an alteration of Garrison Cove's subdivision plat, and that under Tenn. Code Ann. § 13-4-302, any such alteration requires the prior approval of the planning commission. The Director of the City of Murfreesboro Planning Department testified, however that the grant of the disputed easement did not require an amendment to the plat.

## II. MOTION FOR ATTORNEY FEES

On May 31, 2011, the Pattons' attorney filed a Tenn. R. App. P. 59 motion to alter or amend the trial court's judgment by entering an award for attorney fees. He asserted that his clients were entitled to those fees under Paragraph 23 of the Restrictive Covenants, which reads,

These protective covenants shall be enforced by the Architectural Review Committee herein created, or any individual lot owner in said subdivision by proceedings at law or in equity against any person or persons violating or attempting to violate any covenant either to restrain the violating or to recover damages. **In the event litigation is implemented for the enforcement of these covenants, the prevailing party shall be entitled to an award of attorney fees as additional damages.** (emphasis added).

The Pattons insisted that the trial court's order made the Pattons the "prevailing party" for the purposes of the above provision, and their lawyer appended to the motion an affidavit setting out his hourly rate, the number of hours he worked on the case, and the resulting fees incurred, which amounted to $52,552.

The Association's response in opposition to the motion asserted several arguments. It contended that the because the Court held in its favor on several issues in the case, the Pattons should not be considered the prevailing party. It also noted that Robert and Melinda Patton both testified under oath that they had paid no attorney fees, and that pursuant to their agreement with RCK, any attorney fees they incurred would be paid by RCK. The Association accordingly argued that any attorney fees awarded would not inure to the benefit of the Pattons, but rather to RCK, which was not a party to the covenants that included the attorney fee provision. Finally, the Association alleged that the affidavit of attorney fees included work that the attorney performed in relation to RCK's claim against the Rutherford County Planning Commission, which were therefore not properly chargeable to the dispute between the Association and the Pattons.[2]

On June 28, 2011, the trial court filed a Memorandum Opinion in which it denied the Pattons' motion for attorney fees. The court found merit in each of the Association's arguments, and it additionally noted that the language in the covenant provided for an award of attorney fees as "additional damages." Because the Pattons were not awarded any damages, the court inferred that an award of attorney fees was precluded. This appeal

---

[2]The Pattons were represented by the same attorney who represented RCK.

-4-

followed.[3]

## III. ANALYSIS

### A. The Standard of Review

The only question on appeal is whether the trial court was correct to refuse to award attorney fees to the Pattons. We note at the outset that Tennessee adheres to the "American Rule" for awards of attorney fees. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009); *John Kohl & Co. v. Dearborn & Ewing,* 977 S.W.2d 528, 534 (Tenn. 1998). Under the American rule, each party is responsible for that party's own attorney fees, and a party in a civil action may recover attorney fees only if such recovery is provided for by statute or by a contract between the parties. *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005); *Fifth Third Co. v. Mooreland Estates Homeowners Ass'n*, 639 S.W.2d 292, 298 (Tenn. Ct. App. 1982); *Goings v. Aetna Casualty & Surety Company*, 491 S.W.2d 847 (Tenn. Ct. App. 1972).

The Restrictive Covenants of the Garrison Cove Subdivision included a provision for the payment of attorney fees to the prevailing party in any action brought for the enforcement of the covenants. Our courts have consistently held that restrictive covenants should be viewed as contracts and examined as such. *Hughes v. New Life Development Corp.*, 387 S.W.3d 453, 475 (Tenn. 2012); *Maples Homeowners Association v. T & R Nashville Ltd. Partnership*, 993 S.W.2d 36, 39 (Tenn. Ct. App. 1998); *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982). *Berkeley Park Homeowners Ass'n, Inc. v. Tabor*, E2009-01497-COA-R3-CV, 2010 WL 2836120 (Tenn. Ct. App. July 20, 2010) (no Tenn. R. App. P. 11 application filed). Thus, this case involves one of the recognized exceptions to the American Rule. The question before us, therefore, is whether the covenants' attorney fee provision applies to require an award of fees.

The central tenet of contract construction is to give effect to the intent of the parties at the time of the execution of the agreement. *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2000). In the absence of fraud or mistake, courts should construe contracts as written. *Frank Rudy Heirs Assocs. v. Sholodge, Inc.*, 967 S.W.2d 810, 814 (Tenn. Ct. App. 1997); *Whaley v. Underwood*, 922 S.W.2d 110, 112 (Tenn. Ct. App. 1995). The courts should accord contractual terms their natural and ordinary

---

[3]The notice of appeal in this case is captioned "Notice of Appeal as Pertains to Garrison Cove Homeowners Association." It identifies the appealing parties as RCK and its joint venture partners, but the substance of the arguments on appeal is directed towards the vindication of the Pattons' rights rather than those of RCK.

meaning, *Evco Corp. v. Ross*, 528 S.W.2d 20, 23 (Tenn. 1975), and should construe them in the context of the entire contract.

The interpretation of a contract is a question of law and not of fact. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). We accordingly review the trial court's conclusions as to the proper meaning of the restrictive covenants *de novo*, with no presumption of correctness accorded to those conclusions. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d at 308; *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).[4]

## B. The Prevailing Party

The Homeowner's Association argues on appeal that the trial court was correct to find that the Pattons were not the "prevailing party," and, thus, that they are not entitled to attorney fees under the Restrictive Covenant. The Association reasons (as did the trial court) that while the Pattons may have prevailed on the issue of whether the easement violated the restrictive covenant, the Association prevailed on other issues, such as whether it had standing to prosecute this case, whether the Pattons were bound by the covenants and whether they were entitled to the return of the dues they had paid to the Association.

The Association cites the case of *Zinder v. Zinder*, M2003-02507-COA-R3-CV, 2005 WL 427987 (Tenn. Ct. App. Feb. 23, 2005) (no Tenn. R. App. P. 11 application filed), for the proposition that when opposing parties both prevail on some claims, there can be no prevailing party, and thus no obligation to award attorney fees. *Zinder* involved an action to enforce the child custody and support provisions in a marital dissolution agreement, which included a provision for an award of attorney fees to the prevailing party. The trial court declared in that case that the existence of a prevailing party was a condition precedent to any award of attorney fees. Since the court granted both parties some of the relief they requested, it concluded that neither prevailed, and thus that both were responsible for their own fees.[5]

---

[4]The Pattons argue on appeal that the trial court's decision regarding attorney fees should be reviewed under the abuse of discretion standard, which requires the appellate court to give considerable deference to such a decision. While they cite several cases for the proposition that the award of attorney fees is a matter within the discretion of the trial court, those cases are inapposite, for they do not involve a contract such as the one involved in this case.

[5]The court also noted that "Tenn. Code Ann. § 36-5-103(c) provides that the prevailing party may recover attorney fees incurred in enforcing a decree for child support or custody." *Zinder v. Zinder*, 2005 WL 427987 at *2.

The Association also relies on the recent case of *Fannon v. City of LaFollette*, 329 S.W.3d 418 (Tenn. 2010), which involved an action brought under the Open Meetings Act by a City Council member against two fellow City Council members. In that opinion, the Supreme Court focused on the question of standing, but it also discussed the meaning of "prevailing party" for the purpose of awarding attorney fees under the Act.

The court quoted a number of different definitions of "prevailing party" from prior Tennessee cases, as well as from the United States Supreme Court, such as, "one who has been awarded some relief by the court," *Fannon*, 329 S.W.2d at 430 (quoting *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 600-604 (2001)).

The court explicitly noted (contrary to the Association's reliance on *Zinder*) that a party need not prevail on every issue raised in litigation in order to be deemed the prevailing party. It stated that "a prevailing party is one who has succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Fannon* 329 S.W.2d at 431 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Referring to the cases it cited, the court declared that "[e]ach of these rulings is instructive in our analysis." *Fannon* 329 S.W.3d at 431. The court did not adopt any bright-line rule, however, and it observed among other things that "[t]he prevailing party determination is necessarily fact-intensive." *Fannon* 329 S.W.3d at 432.[6]

In a situation such as the one before us where several sub issues are raised, the question of prevailing party is determined by the outcome of the primary issue or the primary relief requested. In other words, the Association sued the Pattons to, inter alia, enjoin the use of the easement the Pattons had granted to RCK.

While the Association and the Pattons may have asserted various legal bases in support of and against the requested injunction, those assertions were merely subissues to the question of whether the Association was entitled to enjoin the use of the easement. The trial court refused the Association's request for injunctive relief because there was no violation of the covenants. The association had brought the action against the Pattons to enforce the covenants, but the covenants did not prohibit the use of the easement as anticipated.

---

[6]The *Fannon* court ultimately held that the plaintiff was the prevailing party because "[t]he litigation altered the 'legal relationship' between the parties and served to modify the 'behavior' of the Defendants." *Fannon*, 329 S.W.3d at 432. The court also held, however, that the plaintiff was not entitled to an award of attorney fees, because neither the Open Meetings Act nor the Declaratory Judgment Act expressly provide for an exception to the American Rule.

Consequently, the Association did not achieve the relief it sought and lost on the main issue in the case. The Pattons succeeded in the only significant issue in the action brought against them, and the Association failed to achieve the result it sought or any of the benefit it sought in bringing the action. *See Fannon*, 329 S.W.2d at 431.

The restrictive covenants in this case included a provision for an award of attorney fees to the prevailing party in any action to enforce the covenants. The Association filed a claim to enforce the covenants against the Pattons, thereby meeting the definition of the type of action required to trigger the attorney fee provision. The Pattons ultimately prevailed on the issue that led the the Association to assert a third party claim to enforce the covenants. They are the prevailing parties for the purpose of any award of attorney fees.

### C. "Additional Damages"

The relevant orders in this case did not include any award of damages to the Association or to the Pattons. As we noted above, paragraph 23 of the covenants states that "the prevailing party shall be entitled to an award of attorney fees as additional damages." The Association contends that the inclusion of the phrase "additional damages" in that provision means that attorney fees cannot be awarded in this case, because no damages have been awarded to which attorney fees may be "additional." It is also reasonable, however, to interpret the disputed language as signifying something other than an implied limitation or condition for the award of attorney fees, such as an acknowledgment that an action to enforce the covenants might result in an award of damages, and that such an award does not preclude an award of attorney fees. Or, that the word "additional" does not limit fee recovery to only one type of enforcement action.

In construing the attorney fees provision of the covenants in context and so as to give effect to the parties' intent, it appears to us that the second interpretation is the better one. Otherwise, the word "additional" would limit attorney fee award, to the Association or the other party, to actions brought solely to recover money damages. In an action to enforce restrictive covenants, the most common relief sought is injunctive, *i.e.*, to stop the activity that violates the covenants. It is not reasonable to assume that the Association intended to limit its ability to recover attorney fees where it successfully sued to enforce the covenants and obtained injunctive relief.

Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract. *Fisher v. Revell*, 343 S.W.3d 776, 780 (Tenn. Ct. App. 2009). When a contract contains ambiguous or vague provisions, those provisions will normally be construed against the party that drafted the contract and is therefor responsible for creating

the ambiguity. *Fisher v. Revell*, 343 S.W.3d at 783; *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 598 (Tenn. Ct. App. 1999); *Maxwell v. Land Developers, Inc.*, 485 S.W.2d 869, 874 (Tenn. Ct. App. 1972).

While the Pattons are signatories to the restrictive covenants, it is beyond dispute that they did not draft them. It appears, rather, that the document was drafted at the behest of the predecessor-in-interest to the Association, the developer of the Garrison Cove Subdivision, and then submitted to parties buying lots in the subdivision for their signatures.[7] If the drafters had wished to limit recovery for attorney fees solely to actions that resulted in an award of damages, they could easily have so specified. They did not do so. Thus, we must construe the provision against the Association, and hold that the lack of a damages award does not preclude an award of attorney fees to the prevailing party.

### D. The Beneficiary of the Fee Award

Finally, the Association asserts that the Pattons are not entitled to an award of attorney fees because they did not personally incur those fees. The record shows that RCK and the Pattons were represented by the same attorney, and that they agreed between themselves that RCK would pay the fees incurred. The Association accordingly argues that an award of attorney fees to the Pattons would amount to either an inequitable windfall for them or, if the Pattons indemnified RCK, an improper circumvention of the American Rule by allowing attorney fees to be awarded to a party that was otherwise ineligible to collect such fees.

However, we note that the attorney fee provision does not include any such language or limitation. For their part, the Pattons point out that while the restrictive covenants entitle the prevailing party to an award of attorney fees incurred in an action for the enforcement of they covenants, they do not state that the provision only applies where the prevailing party is the source of the funds used to pursue or defend the action. They accordingly contend that for the purposes of the covenants, it does not matter where the funds came from. To support their position, the Pattons cite the Florida case of *Rogers v. Vulcan Manufacturing Co.*, 93 So.3d 1058 (Fl. App. 2012), which involved a non-compete agreement containing a provision for an award of attorney fees similar to the one in the case before us.

In that case, an employee of the Vulcan Manufacturing Company left his job to work for Thermodyne. Vulcan then filed an action against the employee to enforce the non-compete agreement. Thermodyne agreed to pay all the attorney fees the employee incurred

---

[7]It appears that the restrictive covenants document was actually prepared by Attorney Larry K. Tolbert, who is also named as a member of the three-person Architectural Review Committee charged with enforcing those covenants.

defending the action. Vulcan's action was ultimately dismissed for lack of prosecution, and the employee filed a motion for attorney fees under the agreement. The trial court ruled that because the employee did not pay his own fees, he was not entitled to payment under the contractual fee provision.

The appeals court reversed, reasoning that "the clear intent of this provision is that the loser pays and the winner does not," and that the actual source of the funds was irrelevant. *Rogers v. Vulcan Manufacturing Co.*, 93 So.3d at 1060. *See*, *also*, *Lakewood on the Green Villas Ass'n, Inc. v. Pomerantz*, 556 So. 2d 505, 507 (Fla. App. 1990) (holding that the parties were mutually bound by the terms of the restrictive covenant, and therefore that the trial court erred in holding that equitable considerations could be used to justify a refusal to grant attorney fees to the prevailing party in an action to enforce the provisions of that covenant).

*Weichert Co. of Maryland, Inc. v. Faust,* 19 A.3d 393, 408 (Md. 2011) involved an attorney fee provision that was part of a non-solicitation clause in an employment agreement. After the defendant real estate office manager left her job to take a position with another company, her former employer brought suit, alleging that she had breached her contract by soliciting its customers. A jury found that the manager did not violate the non-solicitation clause and she filed a motion for attorney fees, which the trial court granted.

The former employer appealed, arguing that its former manager was not entitled to attorney fees because she did not personally incur them, since those fees were paid by her new employer. The Maryland Supreme Court held that in the absence of restrictive language in the contract obligating the prevailing party to personally pay her own attorney's fees, the non-prevailing party was obligated to pay the fees incurred on behalf of the prevailing party, even when those fees were paid by someone else. We believe that the same principle applies here.

We agree with the reasoning in these cases. The right to attorneys' fees in this case is totally governed by the covenant language. We decline to insert an additional requirement for an award of fees. We accordingly reverse the judgment of the trial court, and find that the Pattons are entitled to an award of attorney fees pursuant to the restrictive covenant.

### E.  The Amount of the Award

Although we have determined that the Pattons are entitled to an award of attorney fees, the appropriate amount of such fees remains an open question. The trial court denied the Pattons' motion for attorney fees, so it never reviewed their attorney's fee affidavit or ruled on the amount set out in the affidavit. The Association contends that some of the fees

claimed by the attorney were incurred in the underlying litigation between RCK and the Rutherford County Planning Commission rather than in the third party proceedings involving the Association, and thus should not be charged to them. Only the trial court can determine if that is so.

If a contract provides for attorney's fees but does not specify an amount, the amount awarded must be reasonable. *First Peoples Bank of Tennessee v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010). In Tennessee, the establishment of a reasonable attorney's fee is determined in accordance with the factors set out in the Rules of Professional Conduct. Among these factors are the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, and the fee customarily charged in the locality for similar legal services. Tenn. Sup. Ct. R. 8, RPC 1.5; *Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011).

The trial court is entitled to exercise its discretion in determining the amount of attorney fees to award. *Shamblin v. Sylvester*, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009); *Chaffin v. Ellis,* 211 S.W.3d 264, 291 (Tenn. Ct. App. 2006); *Killingsworth v. Ted Russell Ford, Inc*., 104 S.W.3d 530 (Tenn. Ct. App. 2002); *Fell v. Rambo*, 36 S.W.3d 837 (Tenn. Ct. App. 2000). A trial court's discretionary determination will be upheld on appeal unless the court abuses its discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d at 176 (Tenn. 2011). We accordingly remand this case to the trial court for further hearing on attorney fees and a determination of the amount of the award.

## IV.

The Judgment of the trial court is reversed. We remand this case to the Chancery Court of Rutherford County for the entry of an award for a reasonable amount of attorney fees and for any further proceedings necessary. Tax the costs on appeal to the appellee Garrison Cove Homeowner's Association.

_____
PATRICIA J. COTTRELL, JUDGE