IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 9, 2021 Session

## ANTHONY WALKER ET AL. v. RIVERTRAIL CROSSING HOMEOWNER'S ASSOCIATION INC. ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-1718-19        Rhynette N. Hurd, Judge**

———————————————————

**No. W2020-01201-COA-R3-CV**

———————————————————

This is a premises liability case arising from injuries sustained by Appellant Anthony Walker when he attempted to mow a section of ground within the common area controlled by Appellee, Rivertrail Crossing Homeowner's Association. The trial court granted Appellee's motion for summary judgment.  Discerning no error, we affirm

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Jefferson D. Gilder, Southaven, Mississippi, for the appellants, Anthony Walker and Cynthia Walker.

Todd B. Murrah and Lewis W. Lyons, Memphis, Tennessee, for the appellee, Rivertrail Crossing Homeowner's Association, Inc.

Christopher L. Vescovo and Justin N. Joy, Memphis, Tennessee, for the appellee, State Farm Fire & Casualty Company.

Dawn Davis Carson, Hal S. Spragins, Jr., and Dylan J. Gillespie, Memphis, Tennessee, for the appellee, American National Property & Casualty Company.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

In 2000, Anthony Walker and his wife, Cynthia Walker (together, "Appellants"),

purchased a home in the Rivertrail Crossing Subdivision and became members of the Rivertrail Crossing Homeowner's Association ("Rivertrail"). The Walkers' lot abutted a common area, which contained a retaining wall marking the edge of the Rivertrail property.

On April 7, 2018, Mr. Walker complained to a member of the Rivertrail Board that a section of ground ivy, which was located in the common area near the Walkers' property line, was "snaky" and an eyesore.[1] The member advised Mr. Walker to submit his concerns to the Rivertrail Board in writing because changing the ground cover was a landscaping issue, which would require the Board's approval. There is no evidence that Mr. Walker submitted his concern to the Board. Furthermore, pursuant to Rivertrail's Declaration of Covenants, Conditions, and Restrictions ("CCR"), the common area was to "remain in its natural state, except those areas which have been landscaped," and "clearing, digging, planting, or alteration of any kind" in the common area is prohibited absent written consent of Rivertrail, *see further discussion infra*. There is no evidence that Mr. Walker obtained such written consent.

As set out in Appellants' complaint filed in the Shelby County Circuit Court ("trial court"), on April 21, 2018, Mr. Walker undertook to cut the ground ivy located in the common area adjacent to his lot and the railroad-crosstie, retaining wall. Appellants averred that

> [a]s [Mr. Walker] was cutting beside the railroad ties, his [riding] lawnmower fell into a trough that was covered by the ivy, which could not be seen. The lawnmower jolted over and threw [Mr. Walker] onto his driveway feet below.

Appellants asserted that, "[a]s a result of this incident, [Mr. Walker] [suffered] a spiral fracture of his left femur and a compression fracture of a vertebrae in his back." Based on the foregoing, the Walkers averred that Rivertrail negligently maintained the common area causing Mr. Walker's injuries. Mrs. Walker sought recovery for loss of consortium.[2]

On June 3, 2019, the Walkers filed a Tennessee Rule of Civil Procedure Rule 26.03 motion for protective order,[3] wherein they sought an order

---

[1] A landscape expert explained that the ivy was actually vinca, a domestic groundcover that was planted and is not native to the Greater Memphis area. He testified that vinca is very invasive if not maintained. In the Rivertrail Board President's deposition, he testified that the ivy was "ground cover" located in a natural area and should have been left alone. Mr. Nelius, the owner and operator of Rivertrail's landscaping company, explained that the ivy was present for erosion control, for areas one does not want to maintain or for areas that lack sun.

[2] The Walkers' claims against two other defendants, Keith S. Collins Co, LLC, and Patrick Nelius d/b/a Solo Landscape, were dismissed with prejudice.

[3] Rule 26.03 provides:

[t]hat all records and the medical information contained in the records produced regarding plaintiffs should remain confidential and only be distributed, viewed or utilized by those persons, witnesses or entities involved in this litigation on a need[-]to[-]know basis, who are to agree to keep the records and the information contained in the records confidential. They will sign a receipt and acknowledgement of this protective order prior to receiving the record or the medical information contained in the record.

. . .

All material subject to this order, all reproductions thereof and any computer storage or data containing that information shall be destroyed and/or returned to counsel for plaintiffs or the provider at the conclusion of this litigation[,] with no records retained.

In response to the motion for protective order, American National Property & Casualty Co. (ANPAC) and State Farm Fire & Casualty Co. ("State Farm," and together with Rivertrail and ANPAC, "Appellees") moved to intervene in the lawsuit for the limited purpose of defending against the Walkers' motion for protective order;[4] the trial court granted State Farm and ANPAC's motion in July 2019. Thereafter, by order of October 1, 2019, the trial court denied the Walkers' motion for protective order, reasoning that the grant of the order "would not provide any benefit to the [Walkers] that is not already provided by . . . the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the Gramm-Leach-Bliley Act."

On April 30, 2020, Rivertrail filed a motion for summary judgment. Rivertrail argued that: (1) it owed no duty to the Walkers because Mr. Walker was not permitted to operate a lawnmower on Rivertrail's common-area without first obtaining Rivertrail's

---

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions. . . ; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court. . . .

Tenn. R. Civ. P. 26.03.

[4] ANPAC is Mr. Nelius' insurer. State Farm insures both Rivertrail and Keith S. Collins Co., LLC.

consent; and (2) in the alternative, Rivertrail lacked actual or constructive knowledge of the area of uneven ground. The Walkers filed a response in opposition to Rivertrail's motion for summary judgment, which was heard on June 26, 2020. By order of August 10, 2020, the trial court granted Rivertrail's motion for summary judgment, finding that:

> 1. [Appellants] are required to establish that Rivertrail HOA had knowledge of the area of uneven ground prior to Mr. Walker's incident. It is undisputed that no party had actual knowledge of the uneven ground, and there is no evidence establishing when the ground first became uneven from which Rivertrail HOA could be charged with constructive knowledge.
> 2. Rivertrail HOA has sufficiently demonstrated that Mr. Walker was operating his lawnmower on common area property without the consent of Rivertrail at the time of injury.
> 3. Therefore, Rivertrail HOA has affirmatively negated the issues of duty and knowledge of an alleged dangerous condition, essential elements of [Appellants'] claim, and is entitled to judgment as a matter of law.

The Walkers appeal.

## II. ISSUES

All parties have presented issues for review. After reviewing the parties' respective arguments, we perceive that there are two dispositive issues, which we state as follows:

1. Whether the trial court erred in granting Rivertrail's motion for summary judgment.
2. Whether the trial court abused its discretion in denying the Walkers' motion for protective order.

## III. STANDARD OF REVIEW

Summary judgment "is appropriate when no genuine issues of material fact exist, and the movant meets its burden of proving that it is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Bryant v. Bryant*, 522 S.W.3d 392, 399 (Tenn. 2017). To prevail on a motion for summary judgment, the moving party must either "(1) [s]ubmit[] affirmative evidence that negates an essential element of the nonmoving party's claim or (2) [d]emonstrate[] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Tenn. Code Ann. § 20-16-101. If the moving party meets this burden, the burden of production then shifts to the nonmoving party, who must, if he or she is to survive summary judgment, "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015). Because the decision to grant a summary judgment motion is question of law, summary judgments enjoy no presumption of correctness on appeal.

***TWB Architects, Inc. v. Braxton, LLC***, 578 S.W.3d 879, 887 (Tenn. 2019). Accordingly, we must make a fresh determination that the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. ***Rye***, 477 S.W.3d at 250. We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. ***Perkins v. Metro. Gov't of Nashville***, 380 S.W.3d 73, 80 (Tenn. 2012).

## IV. ANALYSIS

In a cause of action for negligence, a plaintiff must establish five elements: (1) a duty of care owed by the defendant to the plaintiff; (2) breach by the defendant of that duty of care; (3) injury or loss; (4) cause in fact; and (5) proximate or legal cause. ***King v. Anderson Cty.***, 419 S.W.3d 232, 246 (Tenn. 2013). Here, the Walkers' lawsuit sounds in premises liability. A landowner's duty "includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." ***Rice v. Sabir***, 979 S.W.2d 305, 308 (Tenn. 1998). Therefore, in addition to the ordinary elements of negligence, a plaintiff in a premises liability action must also prove that the dangerous condition that caused the plaintiff's injury was either "caused or created by the [property] owner, operator, or his agent" or that "the owner or operator had actual or constructive notice that the condition existed prior to the accident." ***Parker v. Holiday Hosp. Franchising, Inc.***, 446 S.W.3d 341, 350 (Tenn. 2014) (quotation omitted). As set out above, the trial court granted Rivertrail's motion for summary judgment on its finding that Rivertrail negated the prima facie elements of notice and duty.

### A. Notice / Actual or Constructive Knowledge

In its motion for summary judgment, Rivertrail argues that: (1) it did not create the condition complained of by Appellants; (2) it lacked actual knowledge of the defective condition; and (3) "[t]here is no evidence concerning the date of the erosion along the retaining wall from which to charge Rivertrail with constructive knowledge of the condition." Thus, Rivertrail asserts that "there is no evidence that it had actual or constructive knowledge of the alleged dangerous condition prior to [Mr. Walker's injury on] April 21, 2018." Appellants, on the other hand, argue that "[t]here are multiple questions of fact precluding summary judgment on the basis of insufficient notice since there are questions about whether Rivertrail caused the trough and for it to be hidden and as to whether Rivertrail had actual knowledge and constructive knowledge."

Despite Appellants' assertion that there are questions regarding whether Rivertrail had actual knowledge of the uneven condition of the ground where Mr. Walker was injured, our review of the record reveals that this fact was not disputed. In number 18 of Rivertrail's Statement of Undisputed Material Facts, which accompanied its Motion for Summary Judgment, Rivertrail stated: "Rivertrail HOA was unaware that the ground was not level in

the common area alongside the retaining wall adjacent to [the Walkers'] property." (Citations to the record omitted). Appellants' complete response to number 18 was: "Disputed." Rule 56.03 of the Tennessee Rules of Civil Procedure requires that "[e]ach disputed fact . . . be supported by specific citation to the record," Tenn. R. Civ. P. 56.03, yet Appellants cited no facts in the record to support their response. A party "may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. As this Court has explained:

> Merely informing the trial court that the record demonstrates disputed facts, without specifically addressing those facts in the response and specifically citing to portions of the record evidencing dispute, does not satisfy Rule 56. Any fact not *specifically* disputed *with* citations to the record to support the alleged dispute may be deemed admitted.

*Duncan v. Lloyd*, No. M2004-01054-COA-R3-CV, 2005 WL 1996624, at *5 (Tenn. Ct. App. Aug. 18, 2005); *Kidd v. Dickerson*, No. M2018-01133-COA-R3-CV, 2020 WL 5912808, at *11 (Tenn. Ct. App. Oct. 5, 2020), *perm. app. denied* (Tenn. Feb. 4, 2021). By merely replying that fact 18 was disputed, Appellants failed to comply with Rules 56.03 and 56.06. In other words, Appellants' bare assertion that fact 18 was "disputed" is insufficient to create a dispute of material fact. Accordingly, Rivertrail's statement that it "was unaware that the ground was not level in the common area" is admitted, *see White v. Bradley Cty. Gov't*, —S.W.3d—, No. E2020-00798-COA-R3-CV, 2021 WL 2430814, at *6 (Tenn. Ct. App. June 15, 2021), *perm. app. denied* (Tenn. Oct. 13, 2021), and Rivertrail cannot be charged with actual notice.

Concerning whether Rivertrail may be charged with constructive knowledge of the defective condition, we first note that constructive knowledge is "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Parker*, 446 S.W.3d at 351 (quotation omitted). In a premises liability action, "[c]onstructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it." *Id.* Rivertrail argues:

> The record contains no evidence from which to determine the length of time that the ground was uneven alongside the retaining wall. Likewise, there is no evidence suggesting that the ground was level at any time prior to April 21, 2018. Appellants did not inspect the area, and [Rivertrail's landscaping company] did not perform work in the area near the retaining wall.
>
> . . .

- 6 -

[T]here is no evidence from which a jury could reasonably conclude the length of time that the ground was uneven.

In response, Appellants offered the affidavit of Carman Scruggs, who has been a landscape contractor for more than 40 years.[5] Although Mr. Scruggs opined that the erosion likely would have been apparent to any person maintaining the ivy in the common area, he did not offer any estimate concerning how long the uneven ground may have existed. Indeed, Appellants have not identified any facts in the record that would aid a jury in determining how long the ground along the retaining wall was uneven. Consequently, there is no factual basis on which to conclude that Rivertrail had sufficient opportunity to discover and correct the uneven ground. "When there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements." *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987). Therefore, we conclude that Rivertrail effectively negated the element of constructive notice.

## B. Duty

The trial court held that Rivertrail negated the prima facie element of duty because it "sufficiently demonstrated that Mr. Walker was operating his riding lawnmower on common area property without the consent of Rivertrail HOA at the time of injury." "Owners and occupiers of business premises have a duty to maintain their premises in a safe manner **only in areas where customers or the public will foreseeably be present**." *Plunk v. Nat'l Health Inv'rs, Inc.*, 92 S.W.3d 409, 414 (Tenn. Ct. App. 2002) (collecting cases) (emphasis added). "Conversely, the law will not impose a duty on property owners and businesses to use care to maintain places where it is not reasonably foreseeable that customers or the public will be present." *Id.* Here, Rivertrail argues that Mr. Walker was injured when he "engaged in forbidden conduct on real property owned by Rivertrail"; as such, Rivertrail asserts that it had no duty to Mr. Walker because his injuries were not foreseeable. Appellants counter that "there are multiple questions of fact precluding summary judgment on the basis of whether Mr. Walker was acting outside the covenants by being on his mower on the common area when he was thrown from it while backing up with the blades not engaged."

The parties' arguments concern the interpretation of the CCR and specifically "whether Mr. Walker was acting outside the covenants." The interpretation of the CCR is a question of law. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 465 (Tenn. 2012). Furthermore, in interpreting covenants, conditions, and restrictions, we apply the rules of construction that are applicable to contracts generally. *Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 38–39 (Tenn. Ct. App. 1998). Thus, "[o]ur

---

[5] Rivertrail notes that although Appellants characterized Mr. Scruggs as an expert, he "has not been tendered as an expert witness in this matter."

central task . . . is to ascertain and to give effect to the intent of the contracting parties." *Hughes*, 387 S.W.3d at 465. To accomplish this, "[w]e give the terms used in restrictions their fair and reasonable meaning, . . . decline to extend them beyond their clearly expressed scope[, and] . . . construe [them] in light of the context in which they appear." *Maples Homeowners Ass'n.*, 993 S.W.2d at 39 (citations omitted). "All doubts concerning a covenant's applicability should be resolved against the covenant." *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990). Because contract interpretation is a question of law, our review is de novo. *Hughes*, 387 S.W.3d at 465.

As noted above, the CCR provides that the common area shall "remain in its natural state, except those areas which have been landscaped," and "clearing, digging, planting, or alteration of any kind" in the common area is prohibited absent written consent of Rivertrail. The CCR further provides:

> Owners' Easements of Enjoyment. Every Owner shall have a right and easement of enjoyment in and to the Common Area, and such easement shall be appurtenant to and shall pass with the title to every assessed Lot, subject to the following provisions:
>
> . . .
>
> Common Area. The Association shall provide all maintenance, upkeep and landscaping control for the Common Area.
>
> . . .
>
> Within Common Area. The Common Area shall be landscaped by berms, fences, plantings and the like and no Owner of any Lot in the Property shall at any time disturb same without first obtaining the approval of the Architectural Committee subject to the provision of the following paragraph. The Association shall be responsible for maintaining all landscaping and fencing installed by the Association or the Declarant within the Common Area in a neat, attractive and safe condition and appearance.

In their response to Rivertrail's Statement of Undisputed Material Facts, Appellants outline their interpretation of the relevant CCR provisions, to-wit:

> [W]ritten consent deals with areas that have not been landscaped, which would not include this area since it involves landscape plantings. Article VII (1.) of the Rivertrail Covenants states as follows:

> The common areas shall remain in their natural state, except those areas which have been landscaped. No clearing, digging, planting or alteration of any kind shall be done without written consent from the association.

> . . .

> [T]here is no requirement for written approval in Article X, the architectural committee no longer exists and there is no provision for the approval in the following paragraph. Article X Non-Disturbance and Maintenance of Trees and Landscaping Section 2. Provides:

>> <u>Within Common Area.</u> The Common Area shall be landscaped by berms, fences, plantings and the like and no Owner of any Lot in the Property shall at any time disturb same without first obtaining the approval of the Architectural Committee subject to the provision of the following paragraph. The Association shall be responsible for maintaining all landscaping and fencing installed by the Association or the Declarant within the Common Area in a neat, attractive and safe condition and appearance.

Based on the foregoing responses, Appellants make two arguments to support their contention that Mr. Walker was not, in fact, outside the CCR covenants when he operated his riding mower in the common area. First, Appellants contend that the CCR requires prior approval only for interference with portions of the common area that remain in a natural state. Appellants next contend that the CCR provisions regarding alterations to landscaped portions of the common area are ambiguous insofar as these provisions fail to specify the process by which a homeowner may procure Rivertrail's approval.

We begin with Appellant's first argument, i.e., "written consent deals with areas that have not been landscaped, which would not include [the common] area since it involves landscape plantings." As set out in context above, the corresponding portion of the CCR contains two sentences: (1) "The common areas shall remain in their natural state, except those areas which have been landscaped"; and (2) "No clearing, digging, planting or alteration of any kind shall be done without written consent from the association." Contrary to Appellants' reading, the second sentence is absolute—i.e., no alterations "of any kind" shall be done without the written consent of Rivertrail. The prohibition against any kind of alteration to the common area makes no distinction between landscaped and natural portions of same. Sentence one of this provision, which Appellants read to limit the requirement of written consent to natural portions of the common area, is merely declarative, i.e., the common area will remain in its natural state unless landscaped. The CCR, however, clearly states that Rivertrail "shall provide . . . **all landscaping** . . . for the

Common Area" (emphasis added). Thus, giving full force and effect to both sentences in the disputed CCR provision and to the provision granting sole landscaping authority over the common area to Rivertrail, it is clear that the intent of the CCR is to limit alteration of the common area to changes approved by Rivertrail either on its own motion or by written consent to a homeowner. *Maples Homeowners Ass'n*, 993 S.W.2d at 39 (Covenants must be "construe[d] in light of the context in which they appear."); *Buettner v. Buettner*, 183 S.W.3d 354, 358 (Tenn. Ct. App. 2005) (citation omitted) ("The court must construe the various provisions of a contract together, giving effect to each provision and seeking to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language they employed."). Without such written consent, which Mr. Walker undisputedly did not obtain, the CCR precluded him from making any alteration to any portion of common area, whether such portion was landscaped or natural.

In Appellants' second response, *supra*, they argue that because there is currently no "Architectural Committee," there is no mechanism for a homeowner to obtain the required approval. This provision of the CCR again places sole landscaping authority with the "association," i.e., "The Association shall be responsible for maintaining all landscaping . . . ." The provision also reiterates the requirement of pre-approval for any alteration to the common area by a homeowner, to-wit: "no Owner of any Lot in the Property shall at any time disturb [the common area] without first obtaining the approval of the Architectural Committee." While we concede that one may not obtain the consent of a committee that does not exist, the overarching purpose of the disputed CCR provisions is to ensure that no homeowner alters the common area without the consent and approval of Rivertrail. To this end, and aside from the "Architectural Committee," the CCR provides that a homeowner may seek approval directly from the association, i.e., "No . . . alteration of any kind shall be done without written consent **from the association**" (emphasis added). It is disingenuous for Appellants to argue that the absence of an "Architectural Committee" relieves a homeowner from obtaining approval for alterations to the common area when the CCR clearly requires approval from the association. *See generally* **Powell v. Clark**, 487 S.W.3d 528, 536 (Tenn. Ct. App. 2015) ("[U]nder well-settled contract interpretation principles, we must read this [contractual provision] *in pari materia* with the entire agreement."); *accord* **Maples Homeowners Ass'n.**, 993 S.W.2d at 39; **Buettner**, 183 S.W.3d at 358. It was, therefore, incumbent on Mr. Walker to procure written approval from Rivertrail before undertaking to alter the common area. In the absence of such approval, it was not foreseeable that Mr. Walker would be in the area where his injuries occurred. In the absence of foreseeability, Rivertrail owed no duty of care. *See* **Plunk**, 92 S.W.3d at 414.

## C. Protective Order

Having affirmed the grant of summary judgment, no further discovery will ensue. From the record, to date, the Walkers have neither produced any medical records nor signed any HIPAA release. As such, we pretermit Appellants' issue concerning the trial court's

denial of their motion for a protective order.

## IV. CONCLUSION

We affirm the trial court's grant of summary judgment in favor of Appellee. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellants, Anthony and Cynthia Walker, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE